APOIAN, Appellant v. STATE et al., Respondents

(235 N.W.2d 641)

(File No. 11590. Opinion filed November 26, 1975)

Doyle, Bierle & Hagerty, Yankton, for petitioner and appellant.

Gary L. Richter, Zimmer, Richter & Duncan, Parker, for defendants and respondents.

DUNN, Chief Justice.

On May 8, 1974, the South Dakota Board of Examiners in the Basic Sciences, after notice and hearing, revoked and declared

null and void all grades received by petitioner in his June 2, 1973 examination because of cheating. Petitioner sought a rehearing before the Board which was denied. He appealed to the Circuit Court of the Sixth Judicial Circuit which affirmed the actions of the Board. Appeal is now made to this court contending that (1) the defendant Board, a majority of which are practicing physicians, could not act as prosecutor and as trier of the facts in revoking his passing grades, (2) the notice of hearing was insufficient to apprise petitioner of the charges against him, and (3) the defendant Board acted in excess of its statutory and regulatory powers thus denying petitioner due process. We affirm.

In the spring of 1973 petitioner was in his final year of study at the Kansas City College of Osteopathic Medicine in Kansas City, Missouri. He applied to the Board to take the examination for a basic sciences certificate. The examination is in five parts. Once the basic sciences certificate is achieved, the applicant has to pass another examination in order to be licensed in his particular area of the healing arts.

The defendant Board is composed of five members: one doctor of medicine, one doctor of osteopathy, one doctor of chiropractic, and two professors who teach the basic sciences at the college level. The Board is charged with administering the examination and passing on the results. See SDCL 36-3.

Petitioner and a classmate, Elliott Hershel Klain from Kansas City, journeyed to South Dakota and took the basic sciences examination in Vermillion on June 2, 1973. Defendant, Dr. Lynn, was present during the examination and remembered that the two men sat side by side during the examination.

Petitioner was subsequently notified that he had passed the bacteriology, chemistry, pathology, and physiology sections of the exam, but that he had failed the anatomy section. In order to guard against cheating, there were three examination question booklets. The questions in each booklet were the same, but the multiple choice answers were in different order. The answers were supposed to be written on a computer-graded answer sheet. Petitioner called Dr. Lynn about the possibility that his answer

sheet had been graded against the wrong set of answers in anatomy thus accounting for his failing grade.

Dr. Lynn reexamined petitioner's test in anatomy and was satisfied that it had been graded correctly; however, during his investigation he became suspicious that petitioner and Mr. Klain had compared answers during the examination. He got out all their test booklets and answer sheets and became convinced that they had cheated. Dr. Lynn voiced his suspicions to the Board and on December 16, 1973, the Board passed a resolution setting a hearing on the matter for January 26, 1974. Notice of the charges and the hearing was mailed to petitioner, and he retained South Dakota counsel. Petitioner's attorney asked that the hearing be postponed for the convenience of petitioner and the Board agreed. He also requested copies of the examination booklets and answer sheets and the Board complied. On April 1, 1974, petitioner's attorney informed the Board that petitioner was no longer retaining him and that petitioner himself would not be present at the hearing.

The hearing was held on April 21, 1974; petitioner was not present. Dr. Lynn disqualified himself from sitting on the Board and was the only witness. The test booklets and answer sheets were introduced into evidence. Following the hearing, the three members of the Board who had heard the evidence entered findings of fact and conclusions of law and voted unanimously to revoke and declare null and void petitioner's passing grades received in the June 2, 1973 examination.

■ Petitioner's first contention is that defendants denied him due process of law in revoking his passing grades. He claims that the Board was involved in both prosecuting him and in judging his case on the merits. He relies for authority on this court's holding in *Mordhorst v. Egert*, 1974, 88 S.D. 527, 223 N.W.2d 501. In that case we held that the actions of the State Board of Examiners in Optometry violated due process in proceedings concerning the alleged unprofessional conduct of certain optometrists.

Keeping in mind the words of Lord Coke in 1610 in Bonham's Case that "no man shall be a judge in his own cause,"

we shall compare the facts of *Mordhorst* with the facts of this case to determine if defendants' actions violated due process. The controlling facts of *Mordhorst* were stated by this court at 223 N.W.2d 505:

> "Dr. Corwin, the person who signed the formal complaints filed with the Board, admitted that he had no personal knowledge with respect to the specific charges, that he made no effort to verify the contentions, and that he executed the instruments at the request of those attending a meeting of the directors of the South Dakota Optometric Association. This meeting included officers of the Association and members of the South Dakota State Board of Examiners in Optometry. It was Dr. Corwin's testimony that the guilt of the accused optometrists was agreed upon by those present before the complaints were offered for signing. It must be noted that the complaints had been prepared by the attorney who served as counsel for both the Association and the Board."

The facts of the instant case are considerably different. Dr. Lynn initiated his investigation of the petitioner's test papers at the request of the petitioner. During the course of his investigation he discovered what he believed to be evidence that petitioner and Elliott Hershel Klain had cheated on the basic sciences examination. This suspicion was compounded when he recalled that he had seen petitioner and Klain sitting within one seat of each other during all five portions of the examination. Without revealing any of the evidence to the other Board members, Dr. Lynn presented his suspicions to the Board and it passed a resolution on December 16, 1973, alleging that petitioner had conspired with Klain to cheat in the examination and setting an evidentiary hearing for January 26, 1974. When the hearing was eventually held on April 21, 1974, Dr. Lynn disqualified himself from considering the case and acted only as a witness at the hearing. The decision to revoke petitioner's grades was made by the three voting members who attended the hearing.

We find in these facts nothing analogous to the procedures which were condemned in *Mordhorst v. Egert,* supra. There it

was painfully obvious that the members of the Board of Optometry had preconceived notions of the guilt of the accused. The man who signed the complaint had no knowledge relating to the alleged guilt of the accused. Here, Dr. Lynn made a thorough investigation of the evidence. This evidence was not made available to the other Board members until the formal hearing. This fact is borne out by the testimony of Dr. Lynn at that hearing:

"Q   Now, have you indicated, in any manner whatsoever, to the three Board members here present today what you know of your allegations of cheating? In other words, did you divulge any information to them prior to the hearing today?

"A   Not in regard to the evidence."

We are satisfied that the Board acted fairly and that Dr. Lynn did not prejudice the other members of the Board against petitioner. Dr. Lynn knew that he was going to have to testify at the hearing and disqualified himself from sitting with the Board in acting as trier of the facts. His action was in complete accord with our Administrative Procedure Act which is codified at SDCL 1-26. SDCL 1-26-26, which is relevant here, reads in part as follows:

"If one or more members of a board or commission or a member or employee of an agency, who is assigned to render a decision in a contested case, took part in an investigation upon which the contested case is based, he shall not participate in the conduct of the hearing nor take part in rendering the decision thereon, but he may appear as a witness and give advice as to procedure."

Further, we conclude that there was no violation of due process simply because the Board was involved in both the investigatory and the adjudicatory states of the proceeding. These functions were kept rigidly separate on the Board and no member who was involved in the investigation was also involved in the adjudication on the merits.

■ Petitioner also alleges pecuniary bias on the part of the Board members. He notes in his brief that one member of the Board is an osteopath while another member is a chiropractor. He claims that if he were admitted to practice osteopathy in this state he would be in direct competition with these two men. He concluded that this was the motive for the members voting to revoke his passing scores. He cites the opinion of the United States Supreme Court in *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488. In that case the Court stated:

> "It is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." 411 U.S. at 579, 93 S.Ct. at 1698, 36 L.Ed.2d at 500.

The Court went on to say that this statement applied with equal force to administrative adjudicators.

We think the key word in the above quoted sentence is "substantial." We are not convinced that the doctor of chiropractic and the doctor of osteopathy on the Board had substantial pecuniary interests in seeing that petitioner's passing grades were revoked. The certificate which petitioner was seeking was only a basic sciences certificate and not a license to practice medicine in this state. That license can only be obtained by meeting other requirements and satisfactorily passing another examination. See SDCL 36-3-14, 36-3-34, 36-3-35, and SDCL 36-4-11. We do not agree that these professional Board members would attempt to limit the potential competition in this state by revoking grades on the basic sciences examination. Absent a strong showing of substantial pecuniary interest in this case, we must presume that the Board members acted fairly and impartially. *Re Groban,* 1957, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376; *Withrow v. Larkin,* 1975, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712. Since the facts of this case remove it from the holdings in *Mordhorst v. Egert,* supra, and *Gibson v. Berryhill,* supra, we hold that the procedures employed by defendants were consistent with due process of law.

■ Petitioner's next contention is that the notice of hearing did not adequately inform him of the charges against him. There

is no question that a person has a right to know the charges against him regardless of the nature of the proceeding. *Re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117; *In Re Kunkle*, 1974, 88 S.D. 269, 218 N.W.2d 521.

Both petitioner and defendants agree that the standard by which the notice of charges should be judged was set down by this court in *In Re Kunkle*, supra. That case involved the disbarment of an attorney, but the standard for the specificity and form of the charges is applicable to an administrative hearing such as the one in the instant case. In *Kunkle* we held:

> "Although the complaint in the instant case could very well have been made more specific with regard to respondent's alleged misconduct, we hold that .it adequately informed respondent of the nature of the charge against him based upon his handling of the Owens estate, regardless whether the proceedings against petitioner are considered to be of a civil nature, *In Re Morrison*, supra, or quasi-criminal in nature, *In Re Ruffalo*, supra. Even in criminal cases the charge is sufficient if it enables a person of common understanding to know what is intended from the language contained therein and if it apprises a defendant with reasonable certainty of the accusation against him so that he may prepare his defense." (citations omitted) 218 N.W.2d at 524.

We hold that the notice to the petitioner meets the reasonable person test set out above. The notice read as follows:

"BOARD OF EXAMINERS IN THE BASIC SCIENCES

STATE OF SOUTH DAKOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN THE MATTER OF THE CANCEL-
LATION AND REVOCATION OF
GRADES RECEIVED BY OSCAR A.    NOTICE OF HEARING
APOIAN, IN THE SUBJECTS OF
CHEMISTRY, PATHOLOGY, PHYSI-
OLOGY AND BACTERIOLOGY.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TO OSCAR A. APOIAN, 409 Woodland, Apartment F., Kansas City, Missouri, 64106:

Notice is hereby given that on the 26th day of January, 1974, at 6:00 o'clock p. m., in the Oakroom of the Ramada Inn Motel, Sioux Falls, South Dakota, the Board of Examiners for the Basic Sciences, State of South Dakota, acting pursuant to its authority granted by SDCL 36-3, and SDCL 1-26, and acts amendatory thereto, of the South Dakota Code, shall conduct a hearing to determine whether the grades received by said Oscar A. Apoian in the subject of Physiology, Bacteriology, Pathology and Chemistry in the June 2, 1973, Basic Science examination held in Vermillion, South Dakota, shall be declared null, void, cancelled and revoked.

Sections of the South Dakota Code which are involved, along with others, are SDCL 36-3-17, SDCL 36-3-19, and SDCL 36-3-32 in that it is alleged that grades in the above basic science subjects were received by and issued to Oscar A. Apoian contrary to SDCL 36-3, and acts amendatory thereto, by the illegal and fraudulent conspiracy of said Oscar A. Apoian with Elliott Hershel Klain for the purpose of cheating in the taking of the basic science examination held on June 2, 1973, in Vermillion, South Dakota, and as a result thereof said Oscar A. Apoian was issued passing scores in Physiology, Bacteriology, Pathology and Chemistry by fraud contrary to and in violation of SDCL 36-3 of the South Dakota Code.

Dated this 10th day of January, 1974.

Raymond J. Lynn

Raymond J. Lynn
Secretary-Treasurer
Board of Examiners in the
     Basic Sciences of the
     State of South Dakota."

"[C]heating in the taking of the basic science examination" is a phrase well known to any school child and should have fully apprised petitioner of the charge against him. The notice recited the alleged violations, the specific date and time when the

violations allegedly occurred, and the petitioner's alleged accomplice in committing the violations. We cannot conceive of any more preliminary information that the petitioner would need to defend himself at the hearing. It is true that the notice did not get into the specifics of the evidence. In order to be that specific the Board members would have had to review the evidence and petitioner would have been denied due process, as he claimed in his argument above. As it stands, the notice was constitutionally adequate.

Petitioner's last argument is that the Board lacked the statutory power to revoke his passing grades after making the finding that he and Klain cheated during the basic sciences examination. Petitioner points to SDCL 36-3-37 through 36-3-39 where it provides that violations shall be investigated by the Board, but then turned over to the appropriate state's attorney for criminal prosecution or injunctive relief. While these sections may be used by the Board to punish or enjoin violations, they are not the only operative sections in Chapter 36-3 of the Compiled Laws. SDCL 36-3-16 speaks of the basic sciences certificate and says in part that "[t]he state board shall issue such certificate upon conditions set forth in §§ 36-3-17 and 36-3-19." SDCL 36-3-19 provides:

"Each applicant for a certificate of eligibility to take the examinations in the healing arts shall pass an examination in the basic sciences before the board of examiners in the basic sciences *and to its satisfaction,* with a credit of not less than seventy-five per centum in each subject." (emphasis supplied)

■ It is important to keep in mind that the Board did not issue petitioner his basic sciences certificate in this case. Petitioner had failed one of the sections of the examination and had not retaken that section at the time of the hearing. We interpret the above quoted statutes to mean that the Board has jurisdiction to determine whether petitioner satisfactorily passed the examination up until the time that the certificate was issued. This includes not only a determination that the requisite seventy-five percent score was achieved but also that the examination was free from cheating and deception. It could not be interpreted otherwise if

the Board is to carry out its statutory duty in issuing or not issuing a certificate. Since the facts of this case do not squarely present the issue, we decline to consider the question of the Board's powers after a certificate has been issued. We hold only that the Board had jurisdiction to revoke petitioner's passing grades since he had not passed the examination to its satisfaction and no certificate had been issued.

▇ Assignment of error No. 5 relative to sufficiency of the evidence to support the Board's findings was not briefed or argued, and it is deemed abandoned. See *Larson v. Western Underwriters*, 77 S.D. 157, 87 N.W.2d 883.

Since petitioner was not denied due process of law and the Board acted within its statutory authority in revoking his passing grades, the order of the circuit court is affirmed.

All the Justices concur.