THREE LAKES ASSOCIATION v KESSLER

Docket No. 77-1981. Submitted April 5, 1979, at Grand Rapids.—
    Decided July 23, 1979.

Plaintiff Three Lakes Association (Three Lakes) is a nonprofit
    corporation interested in protecting and preserving Torch Lake.
    Defendants are associated with White Sands Estates, a 25-acre
    subdivision near Torch Lake and comprised of 47 residential
    lots and Troy Park, an area dedicated for the use of all the lot
    owners. The trustees of defendant White Sands Estates Prop-
    erty Owners Association own a strip 42 feet by 165 feet abut-
    ting the lake on one end and Troy Park on the other, which the
    White Sands Estates lot owners intend to use as an access to
    Torch Lake. Plaintiff sued the White Sands Estates Property
    Owners Association, its trustees and others to enjoin the trans-
    fer of access to the backlot owners, claiming that the planned
    use would be unreasonable and in derogation of the common
    plan of single-tier, single-family shoreline development and
    would result in an adverse environmental effect on the lake.
    The Antrim Circuit Court, William R. Brown, J., held that the
    ownership of the access strip vested its beneficial use in all the
    owners of the subdivision property and that there was no
    unlawful attempt to create riparian rights in lands not abut-
    ting the lake. The court found no common plan of development
    and no generalized nuisance. It did find, however, that inten-
    sive use could represent a localized nuisance to riparian owners
    close to the access strip and ordered that no motor vehicles or
    boat launchings be permitted, that a maximum of 12 persons
    could use the access at one time and that only one dock,
    consistent with the other docks in the area, could be con-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 12 Am Jur 2d, Boats and Boating § 24.
    78 Am Jur 2d, Waters §§ 54, 260-263, 265.
    Rights of fishing, boating, bathing, or the like in inland lakes. 57
    ALR2d 569.
[2] 78 Am Jur 2d, Waters §§ 122, 123.
[3, 4] 42 Am Jur 2d, Injunctions §§ 37, 275.
[4] 42 Am Jur 2d, Injunctions §§ 352, 353.
    78 Am Jur 2d, Waters §§ 58, 279.

structed and maintained. Plaintiff appeals. The Court of Appeals allowed several owners of riparian land near the access strip to intervene as appellants. *Held:*

1. The several riparian owners on an inland lake and their lessees and licensees may use the surface of the whole lake for boating and fishing, so far as they do not interfere with the reasonable use of the waters by other riparian owners, and, normally, any reasonable use cannot be precluded.

2. The definition of "reasonable use" of water by riparian owners, their lessees and licensees, depends on the facts of each case. A court, in determining what constitutes "reasonable use", should consider the following: the size, character and natural state of the water course; the type and purpose of the proposed uses and their effect on the water course; and, the benefit to the user as opposed to the injury to other riparian owners.

3. A court in granting equitable relief is not bound by the prayer for relief but may fashion a remedy as warranted by the circumstances. However, an injunction which will be ineffectual or which leaves too many questions or difficulties as to the intended enforcement should not be granted.

4. An injunction fashioned by the trial court setting forth restrictions on the use of lake frontage by a land development company which seem reasonable on their face but present difficulties in their intended enforcement by leaving too many questions open about the final remedy will not be affirmed by the Court of Appeals.

Remanded for further proceedings.

1. Waters and Water Courses — Riparian Owners — Reasonable Use.

The several riparian owners on an inland lake and their lessees and licensees may use the surface of the whole lake for boating and fishing, so far as they do not interfere with the reasonable use of the waters by other riparian owners, and, normally, any reasonable use cannot be precluded; access rights cannot be restricted if reasonable.

2. Waters and Water Courses — Riparian Owners — Reasonable Use.

The definition of "reasonable use" of water by riparian owners, their lessees and licensees, depends on the facts of each case; a court, in determining what constitutes "reasonable use", should consider the following: the size, character and natural state of the water course; the type and purpose of the proposed uses

and their effect on the water course; and, the benefit to the user as opposed to the injury to other riparian owners.

3. EQUITY — REMEDIES — ENFORCEMENT.

A court in granting equitable relief is not bound by the prayer for relief but may fashion a remedy as warranted by the circumstances; however, an injunction which will be ineffectual or which leaves too many questions or difficulties as to the intended enforcement should not be granted.

4. WATERS AND WATER COURSES — LAKE FRONTAGE — INJUNCTION — ENFORCEMENT — APPEAL AND ERROR.

An injunction fashioned by the trial court setting forth restrictions on the use of lake frontage by a land development company which seemed reasonable on their face but presented difficulties in their intended enforcement by leaving too many questions open about the final remedy will not be affirmed by the Court of Appeals.

*John W. Unger, P.C.,* and *Jaffe, Snider, Raitt, Garratt & Heuer, P.C.,* for plaintiff.

*Donald J. Berlage, P.C.,* for defendants.

Before: D. E. HOLBROOK, JR., P.J., and R. B. BURNS and BASHARA, JJ.

BASHARA, J. This appeal concerns the access rights of backlot subdivision owners to a private lake.

Plaintiff Three Lakes is a nonprofit corporation primarily interested in preservation and protection of Torch Lake.

Defendants are associated with White Sands Estates, a 25-acre subdivision being developed near Torch Lake. The subdivision is comprised of 47 residential lots and Troy Park, an area dedicated for the use of all the lot owners. (See appendix.)

This litigation involves an undeveloped parcel of lakefront property, 42 feet by 165 feet, that abuts

the east end of Troy Park. The defendants intend to use this parcel as an access to Torch Lake.

Plaintiff's complaint sought an injunction that would enjoin defendants from transferring their access rights to the backlot owners. Plaintiff argues that the planned use would be unreasonable, in derogation of the common plan of single-tier, single-family shoreline development and result in an adverse environmental effect on the lake.

Following a bench trial, the court found that the conveyance of the access strip to the trustees of the White Sands Estates Property Owners Association vested the beneficial use of the access lot in the owners of the subdivision property. Therefore, there was no unlawful attempt to artificially create riparian rights in lands not abutting the lake. The trial court further found that plaintiff had failed to prove a common plan of development.

In determining whether the access would create an unreasonable use, the court considered the local zoning ordinances, the possibility of pollution, erosion, increased noise and activity and applied the factors outlined in *Thompson v Enz,* 379 Mich 667; 154 NW2d 473 (1967).

The trial court found that a generalized nuisance and interference with all riparian rights had not been demonstrated. However, since intense use could represent a localized noise and activity nuisance to riparian owners close to the access site, the court held that motor vehicles and boat launchings would not be permitted, that a maximum of 12 persons could use the access at one time and that only one dock, consistent with other docks in the area, could be constructed and maintained.

Actions involving "funnel" developments on lakes have previously been before the courts. How-

ever, this is the first instance wherein the lake frontage property title is held by an owners association.

At the outset, it should be emphasized that although equity cases are reviewed on appeal *de novo,* great weight is given to the findings of the trial court, and the findings and decisions below will not be disturbed unless we are convinced we would have reached a different result had we been sitting as the trial court. *Pierce v Riley, (Supplemental Opinion),* 51 Mich App 504, 507-508; 215 NW2d 759 (1974).

Plaintiff first claims that the trial court erred in finding that the conveyance of riparian land to a property owners association gave nonriparian owners the right to use the riparian land.

In *Thompson v Enz, supra,* the defendant developers had planned to dredge artifical channels across two lakefront lots so that 128 backlots would have access to the lake. There the Court held that:

"* * * riparian rights are not alienable, severable, divisible, or assignable apart from the land which includes therein, or is bounded, by a natural water course.

"While riparian rights may not be conveyed or reserved—nor do they exist by virtue of being bounded by an artificial water course—easements, licenses and the like for a right-of-way for access to a water course do exist and ofttimes are granted to nonriparian owners.

"We will, therefore, treat the proposal here as though easements for rights-of-way for access are given to the back lot purchasers." 379 Mich 667, 686.

In *Opal Lake Ass'n v Michaywé Limited Partnership,* 47 Mich App 354; 209 NW2d 478 (1973), the defendant developers planned a Swim'n Sun

Club on their 800 feet of shoreline property. The club would eventually be owned by the Michaywé Owner's Association comprised of all parties purchasing property in the development. Michaywé's plans included development of 2,250 residential lots and approximately 1,300 condominium units and 300 mobile home sites.

A panel of this Court, in refusing to enjoin the development of the club, held that,

"The rule is that on an inland lake where there are several riparian owners, such proprietors and their lessees and licensees may use the surface of the whole lake for boating and fishing, so far as they do not interfere with the reasonable use of the waters by other riparian owners. *Bauerle v Charlevoix Road Commrs*, 388 Mich 520, 525 (1972); *Beach v Hayner*, 207 Mich 93, 96 (1919). Plaintiff cannot normally preclude, therefore, any reasonable use of Michaywé's Opal Lake access site by Michaywé's licensees." 47 Mich App 354, 367.

The directive of the preceding cases is that access rights cannot be restricted if reasonable. It should be noted that the riparian owners were the developers and there was no indication they were owners of any of the property in the backlots being granted access.

Here the title to the property is already vested in the representatives of the owners association, who have even more of an interest in the land and the access.

The trial court did not err in its finding concerning the access rights.

Plaintiff next contends that the use of the access property as allowed by the trial court would be unreasonable.

This argument is initially based on the proposition that the use is contrary to the alleged com-

mon plan of development in the locality. Plaintiff failed to show any express deed restrictions as were present in *Indian Village Ass'n v Barton,* 312 Mich 541, 550-551; 20 NW2d 304 (1945), the case on which it relies. Furthermore, zoning ordinances in the area clearly allow shared access plans.

Plaintiff next argues that the proposed use is not reasonable as that term has been defined in Michigan case law.

The definition of reasonable use must depend upon the facts of each case. *Hoover v Crane,* 362 Mich 36, 40; 106 NW2d 563 (1960), *Pierce v Riley,* 81 Mich App 39, 45; 264 NW2d 110 (1978).

It is generally agreed that the rules laid down in *Thompson, supra,* apply as controlling law. *Early v Baughn,* 61 Mich App 244, 245; 232 NW2d 375 (1975), *Pierce v Riley,* 16 Mich App 419; 168 NW2d 309 (1969).

The criteria set forth in *Thompson, supra,* for determining reasonableness can be summarized as follows. First, attention should be given to the size, character and natural state of the water course. Second, consideration should be given the type and purpose of the uses proposed and their effect on the water course. Third, the court should balance the benefit that would inure to the proposed user with the injury to the other riparian owners.

In a well-reasoned and articulate opinion, the trial court considered the foregoing in relation to the testimony given. We cannot say we would have reached a different decision sitting as the trier of fact.

Plaintiff next argues that the trial court erred in allowing any use of the access due to the enforcement problems inherent in the order.

In granting equitable relief, a court is not bound by the prayer for relief but may fashion a remedy

as warranted by the circumstances. *Thompson v Enz, supra, Pierce v Riley (Supplemental Opinion), supra,* 507.

An injunction which will be ineffectual or which leaves too many questions or difficulties as to the intended enforcement will not be granted. *Opal Lake, supra, Pierce v Riley (Supplemental Opinion), supra.*

In the case at bar, no specific provisions were made concerning the responsibility for water testing and enforcement of the limited-use provisions. Plaintiff has no right of entry for informational or enforcement purposes. Therefore, we would remand this case to the trial court to make further appropriate determinations in light of this opinion, *Opal Lake Ass'n v Michaywé Limited Partnership,* 63 Mich App 161; 234 NW2d 437 (1975), and *Opal Lake Ass'n v Michaywé Limited Partnership,* 47 Mich App 354; 209 NW2d 478 (1973).

No costs, neither party prevailing fully.