In the Matter of the SOUTH LINCOLN RURAL WATER SYSTEM APPLICATION FOR PERMIT NO. 4300–3.

No. 12997.

Supreme Court of South Dakota.

Argued May 21, 1980.

Decided Aug. 20, 1980.

Dennis C. McFarland, Sioux Falls, for appellants Friends of Sandstone Aquifer.

Jeff P. Masten of Sam W. Masten, P. C., Canton, for appellee South Lincoln Rural Water System; Eugene J. Irons of Myrabo & Irons, Canton, on brief.

John J. Smith, Asst. Atty. Gen., Pierre, for appellee Water Management Bd.; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

FOSHEIM, Justice.

The circuit court upheld the decision of the South Dakota Water Rights Commission which granted water permit No. 4300–3 to South Lincoln Rural Water System. We affirm on appeal.

The Friends of Dakota Sandstone Aquifer will hereinafter be referred to as (appellants); the South Dakota Rural Water System as (appellees); and the South Dakota Water Rights Commission, presently known as the South Dakota Water Management Board, as the (Board).

On August 30, 1977, appellees submitted application No. 4135–3 for four cubic feet per second (cfs) of water to be withdrawn from the Dakota Sandstone formation. Hearing on that application was held at Spearfish, South Dakota, on August 6, 1977. In response to protests from existing well owners in the Worthing area, the Board deferred action on the application pending further investigation by its staff. On July 10, 1978, the Board received an amended application No. 4300–3 (presently at issue) seeking the appropriation of two cfs of water to be withdrawn from three wells in the Dakota formation approximately five miles south of Worthing. In addition to amended application No. 4300–3, appellees also submitted application No. 4301–3 for the appropriation of two cfs to be drawn from the Vermillion Aquifer as an alternate source. On July 27, 1978, the Board held hearings on both applications, following which application No. 4301–3 was approved but action on amended application No. 4300–3 was deferred until "better testing is done on the Dakota formation and adequate Aquifer information is obtained." Application No. 4300–3 again came before the Board on September 13 and 14, 1978; however, further hearing thereon was continued until December to allow appellants an opportunity to offer opposing testimony.

On December 12, 1978, the Board held a special hearing on application No. 4300–3 in Sioux Falls, which resulted in the final decision to grant the permit subject to certain conditions.[1]

---

1. (1) South Lincoln Rural Water System's annual withdrawal is "limited to 455 acre feet and the total withdrawal is subject to review and adjustment by the Water Rights Commission", and

The scope of review on an appeal from an administrative agency is set forth in SDCL 1–26–36:

The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in light of the entire evidence in the record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

A court need not enter its own findings of fact and conclusions of law but may affirm, modify or reverse the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15–17.

■ We review the record of the administrative agency in the same manner as the circuit court, unaided by any presumption that the lower court's decision is correct. *South Dakota Public Utilities Commission v. Otter Tail Power Co.*, 291 N.W.2d 291 (S.D.1980). *Piper v. Neighborhood Youth Corps*, 90 S.D. 443, 241 N.W.2d 868 (S.D. 1976).

■ The issues presented relate primarily to subsections (5) and (6) of SDCL 1–26–36. We first consider appellants' contention that the Board's findings and conclusions are clearly erroneous. The question for us on appeal under the "clearly erroneous" standard is not whether we would have made the same decision as did the administrative agency, but whether, after reviewing the entire evidence, we are " 'left with a definite and firm conviction that a mistake has been committed.'" *Fraser v. Water Rights Commission*, 294 N.W.2d 784, 788 (S.D.1980), quoting *In Re Estate of Hobelsberger*, 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970).

■ Pursuant to SDCL 46–5–20 [2] and before granting the permit, the Commission (now Board) determined that there was unappropriated water available for the ben-

(2) Proposed wells must be at least two and one-half miles apart prior to any use of water, and

(3) South Lincoln Rural Water System must drill an observation well into the upper layer of the Dakota Formation about 200 feet away from each of the three wells for monitoring purposes, and

(4) "Withdrawals will be restricted if the aquifer head pressure declines 20 feet at designated measuring points during a four year period. . . .", and

(5) If the aquifer head pressure declines or if it appears that it will decline more than 20 feet in four years time, South Lincoln Rural Water System would, upon order of the Commission, be required to change to a new source of water, and

(6) No wells shall be located within 1300 feet of existing Dakota Formation wells without waiver by the owner, and

(7) South Lincoln Rural Water System shall develop and place a line on its alternate source of water from the Davis field in the Vermillion aquifer so that if pumping were stopped from the Dakota Formation near Worthing, members of the system would immediately have water available.

2. SDCL 46–5–20 provides:

Upon the receipt of the proof of first publication, accompanied by the proper fees, the commission shall hold a hearing at the time and place specified in § 46–5–17, at which all interested parties may appear and be heard. The commission shall determine from the evidence presented at the hearing, from such surveys of the water supply as may be available and from the records, whether there is unappropriated water available for the benefit of the applicant. If the proof of second notice of publication has not been received at the time of the hearing, the commission may grant the permit conditioned upon receipt of proof of the second notice. When the proof of second notice is received, the chief engineer may issue the permit on behalf of the commission.

efit of this applicant. Appellants dispute the basis of the Board's finding because they contend that the aquifer in the area of the proposed well field is declining and that no recharge of the aquifer takes place. It appears from the evidence that recharge of this aquifer, while probable, is unknown. SDCL 46–6–3.1 precludes the Board from allowing the quantity of water withdrawn annually from a ground water source to exceed the quantity of the "average estimated annual recharge of water to the ground water." However, the statute continues with this exception:

The board may, however, approve applications for withdrawals of ground water from any ground water formation older than or stratigraphically lower than the greenhorn formation in excess of the average estimated annual recharge for use by municipal systems, nonprofit water supply companies as defined in § 10–36A–1, water user districts as defined in chapter 46–16, sanitary districts as defined in chapter 34A–5 and other common distribution systems.

As the trial court noted, there does not seem to be any dispute that the Dakota Sandstone Aquifer is lower than the greenhorn formation or that the South Lincoln Rural Water System is a nonprofit water supply company organized pursuant to SDCL 10–36A–1. We therefore concur with the trial court's conclusion that the Board need not have made a determination regarding the rate of annual recharge because SDCL 46–6–3.1 vests the Commission with authority to grant the permit notwithstanding that withdrawal may exceed the average estimated annual recharge.

Appellants also challenge the showing of the proponents of the project that there are approximately 350,000 acre feet of water below the area of the proposed well field on the ground that this does not necessarily mean that such amount of water is available and unappropriated. They note the testimony of witness Assad Barrari of the South Dakota Geological Survey given on December 12, 1978, to the effect that there wasn't enough reliable data about the geology of the Dakota Sandstone aquifer to determine how much of this 350,000 acre feet is extractable. The message which emerges from the testimony of the experts is that the aquifer tests conducted could have produced more reliable data had more money and time been expended. There seems to be a consensus, however, that the aquifer contains sufficient water. The uncertainty seems to center on how much the proposed withdrawal would lower the pressure in the aquifer.

■ Considering all of the factors before the Board, we agree with the trial court that the record was sufficient to support the Board's conclusion that water was available for appropriation. Consequently, we cannot conclude that substantial rights of the appellants have been prejudiced because the Board's findings and conclusions are clearly erroneous in light of the entire evidence in the record. SDCL 1–26–36(5).

The next issue is whether the Board abused its discretion and rendered an arbitrary decision. The record of the July hearing indicates the Board felt the August 1977 testing of the Dakota Aquifer was inadequate and that further tests and information were necessary before they could render a decision. Based on that determination, the Board deferred action on the application. The record further reflects that no new major testing was completed prior to their ruling on the application at the December meeting. Appellants rationalize that since there was no new testing prior to the December ruling on the application, the Board's decision demonstrates an abuse of discretion. They point to the expert testimony of Assad Barrari, which indicates the August 1977 test data was not adequate to draw conclusions that unappropriated water is available for withdrawal. The Board counters that new evidence was submitted for their consideration at the December meeting, which consisted of testimony by John Hatch (Water Rights staff engineer) as to the water levels of wells in the Worthing and Canton areas; a proposal of qualifications which the staff felt would allow the Board to grant the permit and yet

protect existing well owners; and finally, expert testimony by Richard Aten, a ground water specialist, who testified that the data from the August 1977 pump test was sufficient to draw conclusions with respect to the availability of water for this permit.

■ We agree with the trial court that the Board's change of position concerning the adequacy of the August 1977 pump test data does not necessarily indicate an abuse of discretion. As the circuit court noted, to hold on appeal that the evidence presented at the December hearing could not have reasonably influenced the Board to reconsider the pump test data would amount to a substitution of our judgment for that of the Board contrary to *In Re Estate of Hobelsberger*, supra. The testimony of Aten that the test was "comprehensive" and that the data was sufficient to draw conclusions warranted the Board's reconsideration and its determination as to the adequacy of that data.

The Board heard evidence and argument relative to the application for permit No. 4300–3 on four separate occasions, consuming some nineteen hours in all. At each of these four hearings, the Board granted opponents of the application an opportunity to present evidence and arguments. Counsel for appellants conceded in argument that his clients were fully heard.

It does appear from the transcript that, at times, some Board members expressed impatience at the hearing. However, a full reading of the record does not support appellants' claim that the Board in effect threw up its hands in irritation and frustration and approved the application outright. Rather, it appears that throughout the hearing the members of the Board exhibited sincere concern for the rights of existing well owners in the affected area and its commitment to protect those interests. This concern is further evidenced by the strict conditions attached to the decision to grant the application.

■ We conclude, therefore, that the administrative findings of the Board were not characterized by an abuse, or unwarranted exercise, of discretion.

Appellants also question the constitutionality of SDCL 46–6–3.1 as applied to the facts in this case. It appears to be their position that if in pumping water under permit No. 4300–3 the system interferes with the rights of existing users, then SDCL 46–6–3.1 and the action taken by the Board, pursuant to that statute, are unconstitutional. That issue was not litigated either at the administrative level or on appeal to the circuit court.

■ In *Application of American State Bank, Pierre*, 254 N.W.2d 151 (S.D.1977), the appellants urged for the first time on appeal a violation of due process. Their only claim to making a timely objection consisted of a proposed finding of fact which was submitted to the State Banking Commission after the hearing and was rejected by the Commission. We held that did not preserve a basis in the record before the administrative agency to raise the issue for the first time before this court. We have consistently held that the constitutionality of a statute will be considered only when it has been properly presented in the lower court. *Rice v. Hofer*, 73 S.D. 75, 39 N.W.2d 481 (1949); *Midland Nat. Life Ins. Co. v. Johnson*, 69 S.D. 150, 7 N.W.2d 620 (1943); *Lyon v. Bertolero*, 23 S.D. 82, 120 N.W. 766 (1909). See also: *Empey v. Rapid City*, 78 S.D. 462, 103 N.W.2d 861 (1960). We accordingly do not consider this to be an issue before us on appeal.

The judgment of the trial court is affirmed.

All the Justices concur.