**Oliver M. ROMEY, Petitioner and Appellee,**

**and**

**Water Rights Division, State of South Dakota, Intervenor and Appellee,**

**v.**

**Tom LANDERS and A & T Cattle Company, Respondents and Appellants.**

No. 14991.

Supreme Court of South Dakota.

Argued Nov. 18, 1985.

Decided Aug. 7, 1986.

Rehearing Denied Sept. 15, 1986.

Jane M. Farrell, Patrick M. Ginsbach, on brief, of Farrell, Farrell & Ginsbach, Hot Springs, for petitioner and appellee.

Daniel J. Doyle, Asst. Atty. Gen., Mark V. Meierhenry, on brief, Atty. Gen., Pierre, for intervenor and appellee.

Thomas W. Stanton, of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for respondents and appellants.

Joseph M. Butler, Michael M. Hickey, on brief, of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for amicus curiae, South Dakota Stockgrowers Ass'n and South Dakota Farm Bureau Federation.

HENDERSON, Justice.

### ACTION

This is an appeal from a circuit court Judgment which affirmed a decision of the South Dakota Water Management Board (Board) requiring Tom Landers and A & T Cattle Company (Landers) to remove 35 earthen dams constructed on Black Banks Creek. We affirm.

### FACTS

Black Banks Creek is located in Fall River County, South Dakota. It lies southwest of Oelrichs, South Dakota, and it flows into Horsehead Creek near U.S. Highway 385, about six miles north of the Nebraska border. On Landers' property, Black Banks Creek consists of two mean-

dering branches which flow west to east. These branches leave Landers' property and eventually merge on or near Oliver M. Romey's (Romey) adjacent property. The water in Black Banks Creek comes from runoff and snowmelt; thus, it is not continuously filled with water throughout the year.

Romey has owned his land since 1956 and he depends on the creek for irrigation and livestock watering. In 1961, Romey applied to appropriate water for irrigation and his application was approved.

In 1977, Landers purchased his property and began constructing a series of 35 low head earthen dams, dikes, and levees on both branches of Black Banks Creek. On the south branch, 15 dams were constructed and two other dams have existed there since 1941. On the north branch, 20 such dams were constructed. All dams lie within two miles of the Landers/Romey border and most exist in sets of four to six dams with all dams in a set within several hundred feet of each other. These dams are constructed so that when the water level rises, water is forced around the end or ends of the dam through wide, grassy areas which serve as spillways and thus the dams spread water across some of Landers' pasture before it reenters the creek. There was testimony from experts and ranchers that this system of dams, dikes, and levees constituted a water spreader or irrigation system.

In 1981, Black Banks Creek did not flow through Romey's land and there was insufficient water for normal livestock needs and no water for irrigation. As a result, Romey was forced to sell some cattle. According to the testimony, some 47 mixed cows and calves were sold in April 1981, and Romey was forced to haul water to his remaining cows. During this time, Landers had water impounded upstream and the thirsty cattle could smell the water, causing Romey to reinforce his fences. In 1982, there was no water in the creek on Romey's property until the middle of May. As a result, Romey had no alfalfa seed crop that year.

In February 1983, Romey filed with the Board a petition for declaratory ruling pursuant to ARSD 74:02:01:46, which also sought an order requiring the removal of the dams Landers built. A hearing was scheduled before the Board on February 24, 1983. On February 22, 1983, Landers requested a continuance in a conference telephone call with the Board members participating, but the continuance was denied, one of the reasons being that a delay would prejudice Romey. On February 23, 1983, one day before the hearing, Landers filed a summons and complaint with the circuit court seeking a declaratory judgment. On February 24, 1983, the Board ordered that a hearing be held before a Hearing Examiner, in exchange for Landers filing motions to dismiss his Summons and Complaint and to dissolve a Temporary Restraining Order. It appears that Landers consented to a dismissal, for a hearing was held before a Hearing Examiner on March 22, 1983, which concluded on March 24, 1983. Landers stipulated at this hearing that the Hearing Examiner could examine the dikes and dams which were vitally in question. Landers fully participated in this administrative hearing.

Adverse parties submitted findings of facts and conclusions of law. Thereafter, the Hearing Examiner filed proposed findings of facts, conclusions of law, and a final decision. In April 1984, after procedural events not dispositive of this appeal, the Board adopted the Examiner's findings and issued a final decision that all dams which Landers constructed on Black Banks Creek be removed, except the two dams existing since 1941.

Landers appealed to the circuit court asserting five issues for consideration. The circuit court affirmed the Board's decision and ordered Landers to remove the dams he had constructed.

From the circuit court's determination, Landers now appeals. One of his principal arguments is that the Board, before which he appeared and fully participated, did not have jurisdiction because it exceeded its jurisdiction and imposed coercive relief.

## DECISION

### I.

### JURISDICTION

■ The Water Management Board is authorized to regulate and control the development, conservation, and allocation of the right to South Dakota's waters. *See* SDCL ch. 46–1; SDCL 46–2–9; SDCL 46–2–11; *Matter of South Dakota Water Management Board*, 351 N.W.2d 119 (S.D. 1984); and *Matter of South Lincoln Rural Water System*, 295 N.W.2d 743 (S.D.1980). Pursuant to SDCL 1–26–15, the Board was required to provide rules for "declaratory rulings as to the applicability of any statutory provision or of any rule or order of the agency." ARSD 74:02:01:46 provides procedures for such declaratory rulings, i.e., it simply effectuates the law as declared by the State Legislature.

Landers contends, however, that this action was beyond the scope of the Board's jurisdiction because it involves disputed facts and seeks coercive relief.* With Landers' contention, we disagree.

Controversies and disputed questions of fact do not preclude a case from declaratory procedures. *Greene v. Wiese*, 75 S.D. 515, 69 N.W.2d 325 (1955). Declaratory and coercive relief may both be granted upon proper grounds. 22 Am.Jur.2d *Declaratory Judgments* § 100 (1965). *See also*, D. Dobbs, *Handbook on the Law of Remedies*, § 2.1 (1973). SDCL 1–26–25 provides that the Board may direct the taking of action, and under SDCL 1–40–19 and SDCL 1–32–1(10), the Board may order action or the abatement of action. Whether or not the Board had the independent authority to *enforce its order* (a separate consideration), as the footnote reveals the circuit court questioned, need not be addressed for the circuit court most assuredly has the authority to enforce its own order requiring removal of the dams.

Landers further contends that the circuit court had exclusive jurisdiction of this matter because SDCL 46–10–4.1 deprives the Board of such jurisdiction.

SDCL 46–10–4.1 provides, inter alia, that "any person may bring an action for the purpose of determining conflicting water rights or rights to use water." In addressing Landers' contention, we first note that SDCL 46–10–4.1 states that a person *may* bring an action in circuit court. The statute does not, however, require it to be brought in circuit court. Second, we note that in other areas of the law, we have recognized that courts and administrative bodies can each have jurisdiction over the same type of dispute. *See Mordhorst v. Egert*, 88 S.D. 527, 223 N.W.2d 501 (1974). Under the circumstances here, both the Board and the circuit court could statutorily entertain this matter and we reject Landers' assertion that the trial court had exclusive jurisdiction. It is noted that Romey sought coercive relief after the Water Resources engineer informed Landers to halt the construction of dams; that Landers indicated he would; but that Landers continued to construct additional dams, dikes, and levees. Landers did not have a water permit nor had he filed an application for a water permit to appropriate water for irrigation for any of the dams, dikes, and levees constructed by him on either branch of Black Banks Creek. It is understandable that Romey and State officials would seek redress before the Water Management Board of this State to stop, correct, and alleviate this type of conduct. We note further that the two original dams on the south branch of the Black Banks Creek were permitted to exist to the benefit of Landers. This Board attempted to be fair and to achieve the ends which could be fairly said to effectuate the policy of the State Legislature, which State Legislature created the administrative agency and defined its duties.

---

* The circuit court, in addressing this coercive relief assertion, stated: "While this court is cognizant of the Board's authority to issue declaratory rulings which require coercive relief, this Court does not believe that the Board has the statutory authority in this case to carry out its ruling. Instead, this court will order coercive action if the Board's decision, upon review, is legally and factually correct."

## II.

### SEPARATION OF POWERS

■ South Dakota Constitution Article II divides the governmental powers into three distinct departments; the Legislative, the Executive, and the Judicial. The powers and duties of the Judicial branch are prescribed in South Dakota Constitution Article V. Landers contends the separation of powers doctrine is violated because the Board, part of the Executive branch, is performing judicial functions. With this contention, we disagree.

"*Quasi* judicial powers involving judgment and discretion are often, and must necessarily be, exercised by administrative and executive bodies and officers." *Champion v. Bd. of County Comm'rs of Minnehaha County*, 5 Dak. 416, 429, 41 N.W. 739, 742 (1889) (emphasis in original). *See also, Nelson v. City of Miller*, 83 S.D. 611, 163 N.W.2d 533 (1968), and *Bandy v. Mickelson*, 73 S.D. 485, 44 N.W.2d 341 (1950). SDCL 1–32–1(10) defines "quasi-judicial function" as

> an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies. The term includes the functions of interpreting, applying, and enforcing existing rules and laws; granting or denying privileges, rights, or benefits; issuing, suspending, or revoking licenses, permits and certificates; determining rights and interests of adverse parties; evaluating and passing on facts; awarding compensation; fixing prices; ordering action or abatement of action; holding hearings; adopting procedural rules or performing any other act necessary to effect the performance of a quasi-judicial function.

In the case at bar, the Board determined whether Landers' dams interfered with Romey's vested water rights; whether Landers' dam system was an unreasonable use or waste of water; and whether Landers was irrigating without a water permit. Such avenues of inquiry are appropriate for the Water Management Board and its particular expertise and are well within the meaning of quasi-judicial functions. We are therefore unable to conclude that a separation of powers violation exists herein.

## III.

### VAGUENESS

■ A permit is not required for reasonable domestic use of water. SDCL 46–5–8. Water waste, however, or unauthorized use, is prohibited, SDCL 46–5–46, and appropriation in excess of reasonable needs is not allowed. SDCL 46–5–5. The Board determined Landers' system of dams, inter alia, to be an unreasonable and wasteful use of water. On appeal to the circuit court, Landers asserted that SDCL 46–5–46 is void for vagueness because the word "waste" is undefined and does not provide the Board with proper guidelines to determine what constitutes waste. The circuit court, however, rejected Landers' contentions. We likewise reject Landers' vagueness contention.

Legislative enactments are sustained "where the general intent of the legislature is capable of being understood. The fact that the language used is capable of more than one construction is not fatal, nor does the necessity of interpretation render an enactment void." *State v. Spink Hutterian Brethren*, 77 S.D. 215, 239, 90 N.W.2d 365, 378 (1958). "An act, although somewhat vague and uncertain, or not as clear as it might be, may nevertheless be valid, unless it is so imperfect as to render it impossible to execute it or to ascertain the legislative intent." *Berdahl v. Gillis*, 81 S.D. 436, 443–44, 136 N.W.2d 633, 637 (1965).

South Dakota's waters are to be put to reasonable use and not wasted. "The reasonableness of the use depend[s] upon the volume of water in the stream, seasons and climatic conditions and the needs of other riparian proprietors as well as the needs of the [water user]." *Omernick v. Dep't of Natural Resources*, 71 Wis.2d 370, 373, 238 N.W.2d 114, 116 (1976), *cert. denied*, 425 U.S. 941, 96 S.Ct. 1679, 48 L.Ed.2d 184

(1976). The criteria for determining reasonableness are:

First, attention should be given to the size, character and natural state of the water course. Second, consideration should be given the type and purpose of the uses proposed and their effect on the water course. Third, the court should balance the benefit that would inure to the proposed user with the injury to the other riparian owners.

*Three Lakes Ass'n v. Kessler,* 91 Mich.App. 371, 377, 285 N.W.2d 300, 303 (1979) (citing *Thompson v. Enz,* 379 Mich. 667, 154 N.W.2d 473 (1967)).

Although "waste" and "reasonable use" are not statutorily defined, the Legislature's general intent is capable of understanding and this general intent, coupled with the case law hereinbefore cited, sufficiently apprises riparian owners of forbidden water use and provides the Board with guidelines for enforcing these statutes.

## IV.

## DUE PROCESS

■ On March 1, 1983, the South Dakota Water Rights Division (Division) intervened as a party in this case. Because the Division—the prosecutor, in Landers' view—and the Board—the adjudicator—are closely akin, Landers contends he was denied due process. We disagree. The facts support that the Board acted only as decision makers herein.

We add: An administrative agency can both prosecute and adjudge a dispute, without violating due process rights, providing a single person or persons does not stand in both the prosecutorial and adjudicatory roles. *Apoian v. State,* 89 S.D. 539, 235 N.W.2d 641 (1975). *Compare Mordhorst v. Egert,* 223 N.W.2d 501.

It is well settled that an administrative agency may perform both adjudicative and prosecutorial functions without violating due process as long as the functions are adequately separated. Moreover, the appellant's unsupported allegation that he was denied due process is insufficient to overcome the presumption that public bodies have acted in accordance with law.

*Appeal of Kriss,* 57 Pa.Commw. 326, 331, 426 A.2d 1216, 1219 (1981) (citations omitted). Here, the record fails to reveal that a single person on the Board acted in both the prosecutorial and adjudicatory roles. That the prosecuting and adjudicating authority are closely akin does not violate due process. We note that the Board appointed a Hearing Examiner who was totally independent of the Board. Landers' attack on the impartiality and integrity of the Board fails.

## V.

## TRIAL BY JURY

■ Landers contends he was denied his right to trial by jury as mandated by South Dakota Constitution Article VI, § 6. This contention, however, is without merit. Landers assented to the Board's resolution of this dispute and consented to the jurisdiction of the Board. He failed to raise this issue on appeal to the circuit court. He is therefore precluded from raising it now. *Weaver v. Boortz,* 301 N.W.2d 673 (S.D.1981).

## VI.

## TAKING OF PROPERTY

■ South Dakota Constitution Article VI, § 13, provides that private property may not be taken for public use without compensation. Landers contends this constitutional provision is being violated because he is being ordered to destroy his dams without receiving compensation therefor. Landers' contention is misplaced.

Before a property owner is entitled to legal compensation for the taking of his property, he must first establish the legal existence of a compensable property interest. *Joslin v. Marin Mun. Water Dist.,* 67 Cal.2d 132, 429 P.2d 889, 60 Cal.Rptr. 377 (1967). Here, the Board and the circuit court determined that Landers' dams could not legally be maintained in their present

condition. Since we affirm that determination *infra*, Landers cannot establish the legal existence of a compensable property interest.

Additionally, the state's authority to regulate water use is a police power. " 'Constitutional provisions against taking private property for public use without just compensation impose no barrier to the proper exercise of the police power.' " *Knight v. Grimes*, 80 S.D. 517, 527, 127 N.W.2d 708, 713 (1964) (citation omitted).

## VII.

### EX PARTE APPEARANCE

■ Under SDCL 1–26–26, the adjudicatory members of an administrative agency cannot communicate ex parte with any person or party in a contested case. All parties must be allowed to participate.

On October 5, 1983, counsel for the Water Rights Division appeared before the Board ex parte and gave a "litigation report." Apparently, this "litigation report" procedure is an ongoing practice of the Board and constitutes a review of water rights litigation so as to keep the Board abreast of the law. Landers suggests the Board's decision is tainted. Specifically, the "litigation report" discussed the circuit court's ruling on the Board's failure to address each of Landers' proposed findings of fact and conclusions of law. Landers had proposed 309 findings of fact and six conclusions of law. Landers insisted that the Board make a ruling on each proposed finding of fact and conclusion of law. The trial court sustained his position. When Landers' appeal was filed from the Board's final decision, Landers did not cite a single specific ruling of the Board as being improper after the Board had ruled on the 309 proposed findings of fact and six proposed conclusions of law. It does not appear that the issues discussed with the Board by Attorney Doyle are issues present in this appeal. Therefore, although we do not condone ex parte communications, the communications here cannot be prejudicial as they are impertinent to the issues of this appeal.

## VIII.

### ERRONEOUS DECISION

■ The Board determined, inter alia, that Landers' use of water by means of a series of low head dams, dikes, and levees, constitutes an unreasonable, inefficient and wasteful use of this state's water which deprives downstream landowners of water for domestic uses and thus interferes with vested rights. Landers contends that such determinations are clearly erroneous and a misinterpretation of South Dakota water law. We disagree.

Our standard of review of administrative agency decisions is outlined in *Kienast v. Sioux Valley Co-op*, 371 N.W.2d 337 (S.D. 1985), and *Stavig v. South Dakota Highway Patrol*, 371 N.W.2d 166 (S.D.1985), and need not be reiterated herein.

To support his contention that the Board misinterpreted and misapplied South Dakota water law, Landers now contends that Black Banks Creek is a dry draw across which he may construct dams. *See* SDCL 46–4–1. Landers personally testified, however, that Black Banks Creek is not a dry draw. "It is settled law in South Dakota that a party to a lawsuit cannot claim the benefit of a version of relevant facts more favorable to his own contentions than he has given in his own testimony." *Connelly v. Sherwood*, 268 N.W.2d 140, 141 (S.D. 1978). See also, *Swee v. Myrl & Roy's Paving, Inc.*, 283 N.W.2d 570 (S.D.1979), and *Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D.1977). Thus, Landers cannot advance his misinterpretation/misapplication of the law contention on the basis of Black Banks Creek being a dry draw.

■ As for Landers' contention that the Board's decision is clearly erroneous, we disagree.

SDCL 46–5–2 provides:

Any person owning land through which any nonnavigable stream passes, may construct and maintain a dam across

such nonnavigable stream if the course of the water is not changed, vested rights are not interfered with, and no land flooded other than that belonging to the owner of such dam or upon which an easement for such purpose has been secured.

Here, the record reveals that after the construction of 35 dams by Landers, on the north and south branches of Black Banks Creek, downstream water rights were interfered with. Romey, the adjacent property owner, did not have enough water for calving season and he lost an alfalfa seed crop. Vested rights include use for domestic purposes, SDCL 46-1-9(2), and livestock watering is a domestic use. SDCL 46-1-6(4). Water does not flow as it did before the construction of these dams and the dams interfere with downstream irrigators. Pictures introduced in evidence reflect on May 12, 1982, a great amount of water impounded behind the structures on Landers' property, whereas in comparison, there is a small amount trickling down to Romey's land. Upon a review of the record, we cannot say the Board's decision is clearly erroneous. Having interfered with vested rights, Landers may not maintain his present system of dams. We therefore affirm the Judgment from which Landers appeals.

This does not mean, however, that on-channel dams are prohibited or that Landers is precluded from constructing future dams which do not interfere with vested rights and comply with all relevant statutes and regulations. On the contrary, on-channel dams are statutorily approved, *see* SDCL ch. 46-4.

Affirmed.

FOSHEIM, C.J., and WUEST, J., concur.

MORGAN, J., and HERTZ, Circuit Judge, Acting as Supreme Court Justice, dissent.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HERTZ, Acting Justice (dissenting).

I dissent.

The decision of the Board as it concerns "waste" is based on SDCL 46-5-46. The above statute states as follows:

The unauthorized use of water to which another person is entitled, or the willful waste of water to the detriment of another or the public, is a violation of this chapter.

This statute * was amended in 1983, but the prohibition against "waste" remained the same without that term ever having been defined. This statute is unconstitutionally vague since nowhere in this statute, nor any other pertinent thereto, is the term "waste" defined.

The Board's decision contains some sixteen (16) specific Findings of Fact or Conclusions of Law concerning "waste", and refers specifically to "waste" and inefficiency over a dozen times.

The standard established by the Supreme Court under which a statute may be rendered void for vagueness and uncertainty has been expressed in *Kelley v. Duling Enterprises, Inc.*, 84 S.D. 427, 437, 172 N.W.2d 727, 732 (1969) as follows:

A statute that either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application lacks the first essential of due process of law. (citations omitted)

While the Board could have adopted regulations defining the term "waste", it never did so. Thus, users are then simply left in a position where they must guess as to what the statute means when it uses the term "waste".

It is noteworthy that the term "waste" is specifically defined in great detail by the legislature in connection with oil and gas conservation. SDCL 45-9-2(1) sets out six

---

\* SDCL 46-5-46 as amended provides:

No person may engage in unauthorized use of water, may waste water or may violate the

terms or conditions of a permit or license to appropriate water.

Source: 1983 S.D.Sess.Laws, Ch. 314, § 79.

separate definitions and examples of what the term "waste" means in connection with oil and gas exploration.

In *Kelley, supra,* we also held that vagueness can be tested by determining whether a statute can be construed to include conduct that would otherwise be harmless. We there held that a statute which can be construed to include "harmless action" is void for vagueness and uncertainty. 84 S.D. at 437, 172 N.W.2d at 732.

In this case, the Board prohibited even one on-channel stock watering dam from being constructed by Landers, which, by itself, certainly could not harm Romey's vested water rights. The Board's decision in effect holds that the construction of a single on-channel dam for stock watering purposes constitutes "waste".

This clearly demonstrates the vagueness of the statutory language. It seems clear that the statute as written constitutes an unconstitutional delegation of power by the legislature to the administrative agency. The power of the legislature to delegate certain of its functions to administrative bodies only exists if that power is given with sufficient guidelines and standards to guide and restrict the agency's actions. This principle was stated in *Boe v. Foss,* 76 S.D. 295, 77 N.W.2d 1 (1956) as follows:

> Inherent in the division of our state government into three distinct departments ... is the principle that the Legislature cannot abdicate its essential power to enact basic policies into law, or delegate such power to any other department or body. Equally as fundamental and settled is the principle that having written broad policy into law the Legislature, in the execution of that policy, can delegate quasi-legislative power or functions to executive or administrative officers or agencies, provided it adopts understandable standards to guide its delegate in the exercise of such powers.

*Id.* 76 S.D. at 313, 77 N.W.2d at 11. (citatioms omitted).

Absent such "understandable standards", the Board in this case was free to impose its own definition of "waste" without regard to applicable law. Here, the Board determined that "waste" encompassed the construction of any and all stock dams on-channel, yet, there is not a single statute, nor duly adopted regulation, that authorizes such a determination.

In *Sarasota County v. Barg,* 302 So.2d 737, 742 (Fla.1974), it is stated that:

> "When a statute is couched in vague and uncertain terms or is so broad in scope that no one can say with certainty, from the terms of the law itself, what would be deemed an infringement of the law, it must be held unconstitutional as attempting to grant to the administrative body the power to say *what the law shall be* ...." [emphasis in original]

> The determination of what conduct falls within the proscription of these ambiguous provisions is left to the unbridled discretion of those responsible for applying and enforcing the act. This amounts to an unrestricted delegation of legislative authority.

Quoting in part from *Conner v. Joe Hatton, Inc.,* 216 So.2d 209, 211 (Fla.1968).

It seems clear that SDCL 46–5–46 is unconstitutionally vague since it does not provide any guide to landowners to determine whether his particular stock watering dams are or are not in violation of its terms. There exists no limitation on the power of the Board as to what "waste" is or is not and it is therefore an unconstitutional delegation of power by the legislature to an administrative agency. I further dissent with the holding of the majority in this case for the reason that in my opinion the Board was without jurisdiction to order the wholesale removal of 35 stock dams based on its "declaratory ruling" pursuant to SDCL 1–26–15.

The fact that appellee Romey knew appellant Landers would not comply with a mere declaratory ruling, and therefore requested the coercive relief which followed, does not confer jurisdiction to the Board to order such coercive relief. Indeed, the trial court conceded that the Board was without jurisdiction to order such coercive and

large-scale relief, but upheld the decision of the Board and concluded that where the facts of the case support the declaratory ruling, the circuit court could order the coercive action. Yet the appellees, much less the majority, have failed to cite a single case or statute where declaratory judgment relief is jurisdictionally appropriate and within the powers of an administrative agency. The fact that Landers consented to have the matter heard before the Board certainly does not confer jurisdiction. It is settled law that one cannot consent to jurisdiction where none existed in the first instance.

It is interesting to note that in this case if Landers had not taken an appeal from the Board's decision, the circuit court could never have invoked its claimed power to coerce the Board's judgment that the 35 dams be removed. Furthermore, it seems to me that aside from the constitutional vagueness issue, a less coercive measure could have been ordered in order to satisfy the claim of Romey that the dams infringed upon his right of irrigation.

Accordingly, I would reverse the decision of the trial court and the Board for the reasons above stated.

I am hereby authorized to state that MORGAN, J., joins in this dissent.

