William G. REIF, d/b/a Reif Construction, and Marge Reif, Plaintiffs and Appellants.

v.

FIRST NATIONAL BANK OF THE BLACK HILLS, Plaintiff and Intervenors.

v.

David A. SMITH and Patricia M. Smith, Defendants and Appellees.

No. 14663.

Supreme Court of South Dakota.

Considered on Briefs March 7, 1985.

Decided May 29, 1985.

Reed C. Richards of Richards & Richards, Deadwood, for plaintiffs and appellants.

Thomas E. Adams of Voelker & Adams, P.C. Deadwood, for plaintiff and intervenors.

Robert A. Amundson of Amundson & Fuller, Lead, for defendants and appellees.

FOSHEIM, Chief Justice.

William J. Reif (contractor) appeals from a judgment on a housing contract. We reverse and remand.

We refer to *Reif v. Smith*, 319 N.W.2d 815 (S.D.1982) *(Reif I)*, for factual background which will be supplemented as necessary for disposition of the issues on this appeal.

In *Reif I*, we held that the plans and material list were inadequate, that owners could not waive a provision of the original contract requiring written change orders for some items and not for others, and that the contractors should receive compensation for all of the extras and the amount owing under the original contract. The owners were to receive a set-off only for that portion of the work performed according to the plans but in a defective manner. They were not to receive a set-off for work accomplished according to the plans or for work that remained unfinished because contractors were ordered off the job. We directed the trial court on remand to redetermine the amount allowed to contractors as extras, and the amount allowed to owners as a set-off against the amount claimed by contractors. The issues on appeal involve the amount of extras, amounts allowed as a set-off, and the work in exchange for rent arrangement between owner and a carpenter.

## AMOUNT OF EXTRAS

■ The first issue stems from the trial court's finding of fact No. VIII:

"Plaintiff's claim for extras in the amount of $6,561.81, which the plaintiffs have proven by evidence, should be reduced by $1,012.02, which is the total of invoices number 5911, 6197, 6428, 6490, and 6592, which were either items purchased or work performed by plaintiff William G. Reif, d/b/a Reif Construction, prior to the commencement of the work on the contract involved in this litigation."

A review of the record indicates that the starting figure of $6,561.80 in Finding VIII is erroneous. That figure appears only on the contractor's lien statement (plaintiff's exhibit 12), and in *Reif I*, findings of fact and conclusions of law. It was originally considered the amount owing to the plaintiffs under the contract as final payment, not as the total amount for any extras. The total amount of claimed extras on the lien statement was $8,840.47.

■ The trial court reduced the erroneous $6,561.80 figure by what it determined was the total of invoices number 5911, 6197, 6428, 6490 and 6592 which appear in plaintiff's Exhibit 11.[1] None of these invoices, however, were ever claimed as extras. The only extras claimed were the invoices included in Exhibit 9. An incorrect disallowance accordingly resulted because the wrong starting figure was reduced by the wrong invoices.

Exhibit No. 9 constituted the entire extra material claimed to have been purchased from Island's Building Center, listed on the lien statement. That total is $2,569.58.

■ The trial court originally found that the living room window for $200.00, the firebox for $345.60 and the fireplace door for $168.28, were extras. Nevertheless, finding of fact No. IX from the second trial concluded contractor failed to prove that all other items claimed as extras were separate and independent of the contract and plans; and therefore were not allowed as extras. This is contrary to our direction on remand that contractor should receive the contract price, plus compensation for the extras, labor and materials. *See Reif, supra* at 817.

1. The total of these invoices is:

| | |
|---|---:|
| Invoice number 5911 equals | $ 727.79 |
| Invoice number 6197 equals | 17.32 |
| Invoice number 6428 equals | 694.62 |
| Invoice number 6592 equals | 6.13 |
| (There was no invoice number 6490.) Rather there was invoice number 6590 which totaled | 4.41 |
| | $1,450.27 |

Contractor states he is claiming extras for everything, however, he does not list the $2,101.00 for outside material and labor, detailed on Exhibit B. The trial court made no finding on this item. Owner admitted he instructed contractor to complete the outside work as claimed in Exhibit B; however, he denies knowledge that he was going to be charged for the material. Because this matter was brought up in the second trial but is not briefed, it is uncertain whether contractor has abandoned its original outside material and labor claim for the $2,101.50. *Boe v. Healy*, 84 S.D. 155, 168 N.W.2d 710 (1969). This uncertainty should be settled.

■ It also appears from the second trial evidence, owner's admissions and the original findings of fact that, contrary to the trial court's current finding of fact No. XIII, the following items were proved as extra materials: (1) materials purchased outside the original agreement for $2,829.58; (2) labor at 120% of materials cost for $3,395.50; and, (3) materials purchased but not installed by contractor which would be the firebox and fireplace door for $513.89. This totals $6,738.97.

## AMOUNTS ALLOWED AS SET-OFFS

After contractor was ordered off the job, owner arranged with a carpenter to make the repairs he deemed necessary. Contractor claims the trial court failed to follow the law of the case expressed in *Reif I, supra*. The trial court found that the plans were not defective; consequently, all repairs claimed by owners were a result of defective workmanship. This finding was made notwithstanding the testimony and other evidence submitted by the contractor indicating that some of the work claimed as a set off was actually 1) work performed

according to the plans, 2) work that was left undone because contractors were ordered off the job, and 3) later additions and changes that were neither called for in the plans or discussed as extras. Contractor also submitted evidence that some of the work claimed was charged for, but not actually completed. Because each item is disputed, we will discuss them separately.[2]

Owner claimed that renailing[3] was required, but admitted that the sheetrock was originally installed according to the plans. Contractor testified that he told owner to use studs to secure the sheetrock, but owner refused and ordered it done according to the plans. In *Reif I*, we held that owners were responsible for the inaccuracies in the construction plans and that owners " should not have received an offset for additional work required due to inadequacy of the blue-print supplied by themselves." *Reif I, supra* at 818.

■ Owner asked the carpenter to texture all of the walls and the kitchen ceiling. The texturing, at least in the kitchen, may have been required because owner added a soffit. Owner conceded that the soffit is not the responsibility of contractor; therefore, any texturing that was required because of that addition should not be the contractor's responsibility.

■ The contractor testified that the center post for the handrail[4] was not in the plans, and that the nailing in the basement was not needed. Witnesses also testified that approximately four days prior to the second trial they inspected the premises. No additional blocking had been completed, even though owner submitted a charge for such work. A specific finding on these items should be made.

2. On Owner's Exhibit E, each item was described by owners, and an estimate was written by the carpenter. We have taken each description from this exhibit.

3. $2,000 General: renail-rock throughout house on all walls, also nails are coming out of existing. Add screws where needed and tape and texture all walls and kitchen ceiling. Also sand

and prepare for painting. Includes upstairs and downstairs. Rework and patch.

4. $400.00 Center posts for handsupport. Check top step where nail comes up. Install handrail to basement. Throughout basement needs nailed, some shortened first, some additional blocking in floor joints also.

■ The original plans called for a flat ceiling in the bedroom. Owner and contractor agreed to change the plans to require a cathedral ceiling.[5] Contractor built the cathedral ceiling, but left a gap, which produced an insect problem; indicating that his work was defective. The trial court's finding on this item was not erroneous.

■ Next, owner submitted a charge for painting.[6] Most of the painting appears to have been required because the sheetrock had to be renailed. As noted, the renailing was necessitated by defective plans. Any resulting painting therefore should also have been disallowed.

■ The contractor testified that the handrail, the splash guard and the closet shelf supports, etc., were not called for in the original plans.[7] According to the plans, the vanity was to be free-standing. The closet was to be left without supports or brackets. These items should accordingly be disallowed.

■ The contractor also admitted photographs showing the door jam had not been repaired. Owner nevertheless submitted a bill for the work and the carpenter testified that he completed the repair. This fact question should be determined.

■ The remaining items, which were listed as C, D, E, H and I on the exhibit, were contested by the contractor through its testimony and that of its witnesses. There are no specific findings indicating these repairs were actually completed, or whether they were required due to defective plans or workmanship, or because contractor was ordered off the job. Findings should be made concerning these items.

■ Our review of the above repairs claimed by owner as a set-off to the contractor's extras is frustrated by some of the findings of the trial court:

> Finding of Fact No. X: The blue prints provided by Defendants to Plaintiffs were not inadequate and plaintiffs had ample opportunity to review same prior to the commencement of the work under the contract. Plaintiffs did not notify Defendants at any time during the construction of the residence of any inadequacies or deficiencies in the plans which would have required extra work or materials, or which would have caused any defects in Plaintiffs' work under the contract.

This finding appears alien to the law of the case expressed in *Reif I, supra,* at 815. At page 816 of that opinion, we stated: "These plans proved inadequate, requiring numerous changes during the construction, including some removal and reconstruction. The materials list was, at best, makeshift." Further, at page 817, we held: "As with the plans, the materials list was inadequate." We also stated that inadequacy in the construction plans was the owner's responsibility. *Id.* Again at page 818, we stated: "As we noted earlier, the plans were inadequate. Smith should not receive an off-set for additional work required due to inadequacy of the blue-prints supplied by themselves."

Moreover, Finding of Fact Numbers XI and XII [8] appear to be in derrogation of the

5. $2,000 Remove strips rough pine from beam. Replace strips properly to fit it. Also use pegs in beam. Bolt holes. Trim to look decent at top where beams come together (bad gap at top).

6. $2,300.00 Painting: Includes all walls and kitchen ceiling that need painting after renailing and taping, etc. Paint complete room if any wall work done as paint may not match if patched here and there.

7. $700.00 Install handrail to *upper level.* Top step need nosing, remove and replace casing, jam, etc. on door that jam is damaged. Replace closet shelf supports, cup brackets, shelf vanity loose, tighten and fasten it, need splash guard against wall where vanity top doesn't fit wall. General repair on base and casing, etc., upstairs.

8. Finding of Fact No. XI: Based upon the court's independent view of the residence and the testimony of the witnesses, the interior work performed by the Plaintiffs was inferior and defective, which inferiority or defectiveness did not result from the alleged inadequacy of the blue prints or drawings used herein by the Plaintiffs. For each extra claimed by Plaintiffs, other than those approved by the court, there was no evidence submitted to establish that: (a) such work performed was outside the scope of

test found in *Reif I, supra,* at 817: "Generally provisions like section 15 prevent contractors from recovering for alterations or extras not subject to a written order.... Such provisions, however, are waived by the owner where he has knowledge of the change, fails to object to the change, and other circumstances exist which negate the provision; i.e., the builder expects additional payment, the alteration was an unforeseen necessity or obvious, subsequent oral agreement, or it was ordered or authorized by the owner."

The findings made contrary to the law of the case were complicated by finding of fact No. XIV:

> Notwithstanding the above findings of the court, the court finds that Plaintiffs and Defendants are entitled to the benefit of their bargain so that Plaintiffs are entitled to receive the contract price plus, in this case, compensation for the items found by this court to be extras and the Defendants are entitled to receive an offset to this award in the amount of the actual costs of making the residence conform to the implied warranties of the contract.

■ The trial court's acceptance of owner's $7,400.00 billings *in toto,* and conclusion that it was a reasonable cost for correcting the defects is suspect when viewed in light of the trial court's findings that the plans were not inadequate, contrary to the law of the case as announced in *Reif I, supra.* In *Reif I,* 319 N.W.2d at 818, we said: "All in all, an offset is available for the portion of the work shown on the plans which was done but the workmanship, not the plans, was defective. An offset is not available for work accomplished according to the plans, or for work not satisfactorily completed after Smith's ordered Reif to stop work."

## ACTUAL COST

The final issue is whether the amounts charged were the "actual cost of making the structure conform to the contract." *Reif, supra,* at 818.

Owner testified that because he did not have available cash to pay for the repairs, he bartered with a carpenter, who agreed to live in the house and provide $400 per month service in exchange for $400 a month rent. Contractor contends that this arrangement does not qualify as "actual cost."

No money exchanged hands and neither the owner, nor the carpenter claimed the bartered consideration for income tax purposes. The owner contends that is irrelevant. Contractor argues that an exchange of labor for property, i.e., rent, cannot be valued in the same manner as an exchange of actual money, relying on *Steere and Ballah v. Gingery,* 21 S.D. 183, 110 N.W. 774 (1907). Owner distinguishes *Steere* because in that case there was an exchange of real property and it construed specific South Dakota statutes.

■ Owner insists he parted with value, i.e., $400 a month rent, and that the $7,400 total represents the actual amount required to make the structure conform to the contract. Contractor counters that the barter arrangement should have been inadmissible because this Court in *Reif, supra,* at 818 held: "reference should have been made to the instant blue-prints, the contract and the materials list for this determination [of actual costs] rather than a contractors bid which was not based on these documents." The owner's carpenter testified that prior to making out Exhibit E, which was his proposal for doing the repairs, he had not seen the blue-prints or the

---

the contract between the parties; (b) the alleged extra items were ordered by Defendants; (c) there was an agreement between the Plaintiffs and Defendants to pay extra, evidenced either by their words or conduct; (d) the extras were not furnished by the Plaintiffs as a voluntary act, or; (e) the extra items were not rendered necessary by the fault of the Plaintiffs.

Finding of Fact No. XII: At no time did Plaintiffs advise Defendants of any extension of their liability for the construction under the contract, which Defendants had a right to know prior to the incurrence of any additional costs by the independent and voluntary act of Plaintiffs.

materials list. He further testified that the items that he repaired were not included on those documents. Because the law of the case as set forth in *Reif I, supra,* was not followed, we find that owner's evidence of actual costs was inadequate.

Contractor also argues collusion existed between owner and carpenter. This issue, however, was not presented to the trial court and will not be considered for the first time on appeal. *Apoian v. State,* 89 S.D. 539, 235 N.W.2d 641 (1975); *Gifford v. Bowling,* 86 S.D. 615, 200 N.W.2d 379 (1972); *Zahrowski v. Dahl,* 78 S.D. 255, 100 N.W.2d 802 (1960); *Hillcrest Terrace Corp. v. Rapid City,* 71 S.D. 291, 23 N.W.2d 793 (1946); *Hutchinson County v. Bender,* 64 S.D. 109, 264 N.W. 816 (1936).

In summary the trial court appears to have disregarded evidence that some of the work charged as repairs was not shown on the plans; was done according to the plans; or was not satisfactorily completed because Smith ordered Reif off the job. Additionally, miscalculation of the amounts that should have been allowed for the extras and disallowed amounts that were never claimed as extras, prompts a reversal and remand for further proceedings consistent with this decision and *Reif I.*

We reverse and remand for further proceedings consistent with this opinion.

All the Justices concur.

WUEST, Circuit Court Judge, Acting as a Supreme Court Justice, participating.