PIERCE v. RILEY

1. WATERS AND WATERCOURSES—RIPARIAN USES.

Riparian uses are either for natural or artificial purposes; a natural use encompasses all uses which are absolutely necessary for the existence of the riparian proprietor and his family and without which they would perish while an artificial use is one which merely increases one's comfort and prosperity, such as commercial profit and recreation, and is not essential for survival.

2. WATERS AND WATERCOURSES—ARTIFICIAL USE—REASONABLENESS.

Users of waters and watercourses for artificial purposes occupy a correlative status with the other riparians in the exercise of their riparian rights for artificial purposes; use for an artificial purpose must be only for the benefit of the riparian land and reasonable in light of the correlative rights of the other proprietors.

3. WATERS AND WATERCOURSES—LAKES—CANALS—NONRIPARIAN OWNERS' ACCESS.

Proposed digging of a canal through one lakefront lot in order to provide access to the lake for 90 lots immediately behind it, increasing the number of families having access to the lake by 66%, constituted an unreasonable artifical use of the lakefront lot for commercial exploitation and profit and did not justify the injury to the other riparian owners which would result from the overcrowding of the lake.

Appeal from Oceana, Harold Van Domelen, J. Submitted Division 3 January 7, 1971, at Grand

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur, Waters §§ 6, 58, 285.
[2] 56 Am Jur, Waters § 285.
[3] 13 Am Jur 2d, Canals § 5.

Rapids. (Docket Nos. 8698, 8699.) Decided July 23, 1971. Leave to appeal denied, 386 Mich 776.

Complaints by Don Pierce and others in the Stony Lake Cottage Owners' Association and by the State of Michigan, as intervening plaintiff, against Stanley D. Riley and others, doing business as Holiday Shores on Stony Lake, for a declaratory judgment and for injunctive relief. Judgment for defendants. Plaintiffs appeal. Reversed.

*Vander Veen, Freihofer & Cook* (by *George R. Cook* and *Fred N. Searl*) and *Don V. Souter,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Warren R. Snyder,* Assistants Attorney General, for intervening plaintiff.

*Walter A. Urick,* for defendants.

Before: HOLBROOK, P. J., and McGREGOR and T. M. BURNS, JJ.

T. M. BURNS, J. Plaintiffs are owners of property on Stony Lake in Oceana County. They filed suit in circuit court for a declaration of rights and to enjoin defendants, also owners of land abutting Stony Lake, from granting right-of-way easements for lake access to nonriparian owners. The trial court, sitting without a jury, rendered an opinion June 10, 1967, granting judgment to the defendants. That decision was appealed to this Court, and we remanded the case to the trial court for reconsideration in light of *Thompson* v. *Enz* (1967), 379 Mich

667.  See *Pierce* v. *Riley* (1969), 16 Mich App 419. On remand, the trial court again found for the defendants, and from that decision, plaintiffs appeal.

Stony Lake has an area of about 278 acres.  There are presently about 138 cottages fronting on the lake and enough vacant property to accommodate about 15 more.  Defendants, who have about 373 feet of frontage, propose to dig a canal through their one lot fronting on the lake and thus provide access to the lake for 90 lots immediately behind the only lot, lot No. 91, having natural frontage on the lake.

The number of families having access to the lake will thus increase from 138 to 229 or about a 66% increase.  The number of families per surface acre of the lake will increase from about 0.5 to 0.89. Although there was no evidence which would conclusively establish that the level of pollution would increase to any great extent or that the canal would substantially reduce the level of the lake, it is apparent that the use of the lake would increase quite dramatically.

All of the lots behind lot No. 91 would be nonriparian but would have access to the lake through the canal which would be an easement granted to the ninety nonriparian lots.  Therefore, although the lot owners would have no riparian rights, they would have freedom of access to the lake via the easement granted to them by defendant, the riparian owner of lot No. 91.

In *Thompson* v. *Enz, supra,* the Supreme Court was faced with a situation similar to the one presently before this Court.  In that case defendant proposed to develop 144 to 153 nonriparian lots. Approximately 16 of the lots would have natural frontage while the remainder would have access to

the lake by a canal which would border on all of the back lots. The canal would constitute an easement giving the back lots a right of access to the lake.

The Supreme Court first determined that such a use would constitute an artificial use and therefore is limited by the "reasonable-use rule":

"Riparian uses are divided generally into two classes. The first of these is for natural purposes. These uses encompass all those absolutely necessary for the existence of the riparian proprietor and his family, such as to quench thirst and for household purposes. Without these uses both man and beast would perish. Users for natural purposes enjoy a preferred nonproratable position with respect to all other users rather than a correlative one.

"The second of these is a use for artificial purposes. Artificial uses are those which merely increase one's comfort and prosperity and do not rank as essential to his existence, such as commercial profit and recreation. Users for artificial purposes occupy a correlative status with the other riparians in exercise of their riparian rights for artificial purposes. Use for an artificial purpose must be (a) only for the benefit of the riparian land and (b) reasonable in light of the correlative rights of the other proprietors. *Evans* v. *Merriweather,* 4 Ill (3 Scam) 492 (38 Am Dec 106). It is clear in the case before us that the use made of the property by the defendants is for a strictly artificial purpose and must meet the test for reasonableness."

The Court then remanded the case to the trial court to determine whether the use proposed by defendants was reasonable.[1] The opinion then instructed

---

[1] The case was before the Supreme Court on the question of whether plaintiffs' motion for summary judgment had been properly granted. There had, therefore, been no findings as to whether the proposed subdivision constituted a reasonable use.

the trial court to keep the following factors in mind in determining whether the use would be reasonable:

"First, attention should be given to the water course and its attributes, including its size, character and natural state. In determining the reasonableness of the use in the case at bar, it should be considered that Gun lake is not a large lake, that it is used primarily for recreational purposes, and that the defendants are changing its natural state by expanding the lake frontage of their property from an actual 1,415 feet to a total, inclusive of the canals, of 12,415 feet, being an increase in frontage of approximately 800 per cent.

"Second, the trial court should examine the use itself as to its type, extent, necessity, effect on the quantity, quality, and level of the water, and the purposes of the users. Factors in this particular case that should be considered include: (a) that this use would permanently add approximately one family without riparian rights to each 18 acres of surface area (or 137 families); (b) the possibility that the level of the lake may be reduced by withdrawing trust waters into over 2 miles of the proposed canals, as is alleged by the attorney general in his motion to intervene; (c) the possibility that pollution may result; (d) that there is nothing in the record showing any necessity for this use; and (e) the fact that it appears that the purpose of the defendants herein is merely commercial exploitation.

"Third, it is necessary to examine the proposed artificial use in relation to the consequential effects, including the benefits obtained and the detriment suffered, on the correlative rights and interests of other riparian proprietors and also on the interests of the State, including fishing, navigation, and conservation. An additional fact to be considered by the trial court in this litigation is whether the benefit to the defendant subdividers would amount merely to a rich financial harvest, while the remaining proprietors—who now possess a tranquil retreat

from everyday living—would be forced to endure the annoyances which would come from an enormous increase in lake users."

Applying the above criteria to the instant case, the trial court found the use to be reasonable. The court relied heavily on the fact that since there are public parks and private landings which may be used by the general public to gain access to the lake, that it would be strange reasoning to bar people from access to the lake by the canal dug through lot No. 91. The trial court also pointed out that since defendants could maintain a landing open to the public on lot No. 91, there is no good reason to prevent the defendants from providing access to 90 lot owners via the canal.

We disagree. The fact that a landing by which the general public could gain access to the lake could be maintained on lot No. 91 is irrelevant, as is the fact that there are presently landings and parks which the public may so use. If a landing were presently built on lot No. 91, the use of Stony Lake for recreational purposes would not be significantly increased because the general public may, through the use of present facilities, gain access to the lake at any time. However, the construction of 90 residences with ready access to the lake at all times, will not significantly decrease the number of persons using the lake as members of the general public, but it will increase drastically the use of the lake by local residents, the people who put the heaviest burden on a lake this small in area.

It is the opinion of this court that the increased burden on the lake caused by the proposed real estate development is not a reasonable riparian use by the owners of lot No. 91. Applying the criteria in *Thompson* v. *Enz, supra,* to determine the reasonableness of the use, we hold that an increase in the

number of residences having access to the lake by 66%, when the number of residences which have frontage could never number more than about 153, is sufficiently injurious to the riparian owners as to constitute an unreasonable use.

Stony Lake is an extremely small lake. The proposed real estate development would overcrowd the lake for what appears to this court to be a commercial exploitation only. We see no reason to deprive the present riparian owners of the enjoyment of the lake when the only reason for increasing the burden on the lake is merely the commercial profit of the owner of one riparian lot. The benefit to the one riparian owner is not sufficient to justify the injury to the other riparian owners.

Judgment reversed, costs to plaintiffs.

All concurred.