EARLY v BAUGHN

WATERS AND WATER COURSES—LAKES—CANALS—STATUTES—INLAND LAKES AND STREAMS ACT—DEPARTMENT OF NATURAL RESOURCES.

A lake-side property owner's suit in circuit court to enjoin the completion of canals from the lake is ordered held in abeyance pending findings of fact and decision by the Department of Natural Resources, upon application of defendants, pursuant to the procedures of the Inland Lakes and Streams Act of 1972 which became effective subsequent to the commencement of litigation, but prior to the circuit court's decision (MCLA 281.951, *et seq.).*

Appeal from Livingston, Paul R. Mahinske, J. Submitted Division 2 March 4, 1975, at Grand Rapids. (Docket No. 19529.) Decided May 28, 1975.

Complaint by Harold C. Early against Laurence E. Baughn, Eleanor F. Baughn, Clifford W. Miller, and Mildred M. Miller to enjoin completion of canals from a lake. The Portage and Base Lakes Association, Inc., intervened as a plaintiff. Judgment for defendants. Plaintiff Early appeals. Remanded with instructions.

*Laird & Grace,* for plaintiff Early.

*Wilfred H. Erwin,* for defendants.

Before: D. E. HOLBROOK, P. J., and BRONSON and M. J. KELLY, JJ.

M. J. KELLY, J. This protracted litigation was

REFERENCE FOR POINTS IN HEADNOTE
78 Am Jur 2d, Waters § 279.

instituted on June 5, 1969 by plaintiff, a property owner on Mud Bay, to enjoin defendants from the completion of certain canals by defendant Baughn under authority of a permit from the Department of Conservation pursuant to 1965 PA 291, the Inland Lakes and Streams Act. The purpose of dredging and other maintenance activities on the canal and channels was to complete the development of a subdivision called Camelot Shores. The only testimony taken at trial was the testimony of plaintiff Early and defendant Laurence E. Baughn. A stipulated set of facts was submitted to the court as were engineering reports in lieu of expert testimony.

The parties agree that the rules laid down in *Pierce v Riley,* 35 Mich App 122; 192 NW2d 366 (1971), and *Thompson v Enz,* 385 Mich 103; 188 NW2d 579 (1971), apply as controlling law in this case.

The agreed statement of facts is as follows:

"Plaintiff Harold C. Early filed this action on June 5, 1969 showing that he owns 11.1 acres of land adjoining Mud Bay which is connected with Portage Lake. The complaint alleges that the defendants were then in the process of digging a canal leading off from Mud Bay, that they were dredging and widening Mud Bay and plaintiff thereby was suffering great damage. The complaint sets forth plaintiff's claim as to irreparable damage and the complaint seeks an injunction to restrain the defendants from further excavating, digging, dredging, etc. and that defendants be required to fill in the canal excavated by them. The Portage and Base Lakes Association, Inc. was permitted to join as a party plaintiff and the relief sought by said intervening plaintiff is substantially the same and said intervening plaintiff seeks to have lots 18 through 22 and lots 31 through 40 of Camelot Shores No. 3 (owned by defendants) declared to have no riparian rights on Mud Bay or Portage Lake. These lots border the disputed canal. (Lots 31 to 40).

"The defendants allege in their answer that a portion of the canal referred to was dug many years ago; that the work being done on this canal since the institution of this legal action was to slope the shores of said canal and to straighten the shore line and clean up the edges of the canal; the defendants deny any damage to the ecology of Portage Lake and deny any injury to plaintiff's property; defendants deny that their actions reduces the level of Portage Lake or that their actions add to the pollution of Portage Lake. The defendants urged an affirmative defense to the general effect that intervening plaintiffs are estopped from this action inasmuch as they have sat idly by and permitted these defendants to expend large sums of money in the digging of a canal begun in 1958; that plaintiffs have attempted to close off Mud Bay from the main body of Portage Lake by partially filling in the channel between these bodies of water and that the action of these defendants in no way interfered with the rights of other property owners on said lake including this plaintiff.

"Plaintiffs obtained a temporary injunctive order dated May 1, 1970 which is contained in the file of this case. A modification of this order was entered on July 11, 1970 which prevented the defendants from further excavating, lengthening or widening the canal in question, but permitted the defendant's land leveling operations as to the banks of said canal pending final hearing in this matter.

"Plaintiff owns 11.1 acres of land on the North side of the channel between Mud Bay and Portage Lake. Defendants have a subdivision which lies on both sides of Camelot Drive which is known as 'Camelot Shores No. 3' and which contains lots 18 through 40. The disputed canal runs along the northerly boundary of the subdivision known as Camelot Shores No. 3 and borders on Lots 30 through 40 of said subdivision.

"Mud Bay is connected with Portage Lake by a narrow, but navigable channel. The Plaintiff Early, owns land to the North of said channel and also owns land on the South side of said channel consisting of a peninsula. Plaintiff's 11.1 acres is land locked and he has no existing roadway or easement to get from said 11.1 acres to the public highway except by water.

"Previous actions have been filed in this Court to seek an implied right of way from plaintiff's peninsular land to the south of Mud Bay across defendant's lands to the public highway.

"Beginning about 1958 the defendant's predecessors in title excavated from the NW'ly corner of Mud Bay and dug the canal in question from Mud Bay west into their lands. This however, was a natural drainage area with a higher water table than the lake.

"On September 13, 1968, the defendants applied for and obtained a permit from the Michigan Conservation Department to dredge out the channel. The permit which was issued 9–13–68 was based upon an application submitted by the defendants to 'complete a channel that was started several years ago' running along side of Lots 31 through 40 of Camelot Shores No. 3. A copy of this application permit is attached hereto showing on said permit the requirements attached thereto by the Michigan Conservation Department. According to the permit the work was to be completed by December 31, 1969. An extension of time was granted by the Conservation Department extending the time to June 1, 1970 and a further extension was granted extending the time to July 1, 1970. The extension of said canal westerly provided for an extension of approximately 500 feet to a point approximately 200 feet west of the westerly boundary of Lot 40 of Camelot Shores No. 3. The excavating work as authorized by the Michigan Department of Conservation permits was completed.

"An engineering report is attached hereto showing among other things, the following: The approximate acreage covered by Portage Lake; the approximate acreage covered by Mud Bay; the number of feet of water frontage on Mud Bay; and the position of the disputed canal; the number of additional lots which will be served by the extension of the canal from lot 37 west to its terminus; the percentage of total acreage of Portage Lake and Mud Bay allotted to each lot owner on those bodies of water as the result of the extension of the canal; the approximate number of public access points to Portage Lake.

"It is agreed that the Court may decide this case in

accordance with the rules laid down in the case of *Thompson v Enz,* July 1971, 385 Michigan Supreme Court Reports, page 103 and the case of *Pierce v Riley* (July 1971) Michigan Court of Appeals, Vol. 35, page 122."

Applying the test of "reasonableness", the trial court found that defendant's proposed canal construction did not violate the reasonable use rule with regard to the Mud Bay-Portage Lake area. Compared to Mud Bay, Portage Lake is by far the larger, and the effect of increased use and activity on Portage Lake as compared to Mud Bay would be correspondingly lesser. Looking at the effects on Mud Bay alone, the increased activity would be substantial because the number of owners with access would approximately double under the plan. In other words, depending upon the frame of reference, the increased activity on Mud Bay might be unreasonable or burdensome, while the increased activity on Portage Lake would be minimal.

The Inland Lakes and Streams Act of 1972, MCLA 281.951, *et seq.;* MSA 11.475(1) *et seq.,* repealed 1965 PA 291; MCLA 281.731 *et seq.;* MSA 11.451 *et seq.,* effective January 9, 1973. This was after the litigation in this cause was commenced, but before the opinion of the trial court dated September 18, 1973. We believe the issues here presented could well bear illumination by the procedures called for in the new act. Following therefore the lead of our Supreme Court in *Pierce v Riley,* 392 Mich 765; 219 NW2d 434 (1974), we remand this cause to the Livingston County Circuit Court with instruction to hold this equitable cause in abeyance pending findings of fact and decision by the Department of Natural Resources on an application by defendants pursuant to

MCLA 281.951 *et seq.;* MSA 11.475(1) *et seq.* Defendants are ordered to make such an application within 30 days. This Court retains no further jurisdiction. No costs, neither party having prevailed.