PIERCE v RILEY

1. APPEAL AND ERROR—LAW OF THE CASE—SUBSEQUENT TRIAL.

A conclusion reached in an earlier appeal to the Michigan Supreme Court becomes the law of the case and is not subject to review on appeal from a subsequent trial; courts will not review former decisions made by the same court in the same cause and based on the same facts.

2. APPEAL AND ERROR—EQUITY—FINDINGS OF FACTS.

The Court of Appeals reviews equity cases *de novo* but will not disturb the trial court's findings unless convinced that a different result would have been reached had the Court occupied the trial court's position.

3. WATERS AND WATER COURSES—RIPARIAN RIGHTS—INLAND LAKES— USES—REASONABLENESS.

Reasonableness remains the criterion for use of water by riparian owners; where there are several owners to an inland lake, such proprietors and their lessees and licensees may use the whole lake for boating, swimming, fishing and other similar riparian rights, so far as they do not interfere with the reasonable use of the waters by other riparian owners.

4. WATERS AND WATER COURSES—RIPARIAN RIGHTS—ARTIFICIAL USES —REASONABLENESS.

Matters to be considered in determining whether a use of riparian rights is reasonable include (1) what the use is for, (2) its extent, duration, necessity, and its application, (3) the nature and size of the stream, and the several uses to which it is put, (4) the extent of the injury to the one proprietor, and of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 991.
[2] 5 Am Jur 2d, Appeal and Error § 822.
[3] 78 Am Jur 2d, Waters § 54.
  Rights of fishing, boating, bathing, or the like in inland lakes. 57 ALR2d 569.
[4] 78 Am Jur 2d, Waters § 286.
[5] 78 Am Jur 2d, Waters §§ 275, 276.
[6] 78 Am Jur 2d, Waters § 256.

benefit to the other, and (5) all other factors which may bear upon the reasonableness of the use.

5. WATERS AND WATER COURSES—RIPARIAN RIGHTS—INLAND LAKES AND STREAMS ACT—PROCEEDINGS—STATUTES.

There is nothing in the Inland Lakes and Streams Act that limits the rights of a riparian owner to institute proceedings in any circuit court of the state against any person when necessary to protect the owner's riparian rights (MCLA 281.961; MSA 11.475[11]).

6. EQUITY—COURTS—EQUITABLE SOLUTION—ECONOMIC BURDEN—DEVELOPMENT WITH ISSUE IN LITIGATION.

The Court of Appeals should not weigh the economic positions of the respective parties and consider the burden placed on each to arrive at an equitable and enlightened solution to an equity case where the economic burden of the defendants was caused by the defendants' decision to proceed with further development of a marina at their own risk while the issue of the reasonableness of the development was still in litigation.

Appeal from Oceana, Harold VanDomelen, J. Submitted November 3, 1977, at Grand Rapids. (Docket No. 31302.) Decided January 24, 1978. Leave to appeal applied for.

Complaint by Don Pierce and others in the Stony Lake Cottage Owners Association against Stanley D. Riley and others, individually and doing business as Holiday Shores on Stony Lake, to enjoin the defendants' unreasonable use of their riparian rights. Judgment for defendants. Plaintiffs appeal. Defendants cross-appeal. Reversed.

*Peter W. Steketee* and *Cholette, Perkins & Buchanan* (by *Don V. Souter*), for plaintiffs.

*Walter A. Urick,* for defendants.

Before: R. M. MAHER, P. J., and M. F. CAVANAGH and N. J. KAUFMAN, JJ.

PER CURIAM. The original complaint in this

action was filed in August, 1966. This is the fourth time the matter has come before this Court. Plaintiffs are owners of property on Stony Lake in Oceana County. They originally filed suit in circuit court seeking to enjoin defendants, also owners of land abutting Stony Lake, from granting right of way easements for lake access to nonriparian owners in a development called Holiday Shores. In June, 1967, the trial court dismissed plaintiffs' complaint, but this Court, on appeal, remanded for further consideration in light of *Thompson v Enz,* 379 Mich 667; 154 NW2d 473 (1967). See *Pierce v Riley,* 16 Mich App 419; 168 NW2d 309 (1969). *(Stony Lake I).*

On remand, the trial court again dismissed plaintiffs' complaint. This Court reversed that decision in *Pierce v Riley,* 35 Mich App 122; 192 NW2d 366 (1971), *(Stony Lake II),* and enjoined defendants from granting riparian rights to nonriparian owners. Defendants' proposed use of the lot as the site of a dredged channel was deemed unreasonable. The Supreme Court, on December 22, 1971, denied defendants' application for leave to appeal.

Plaintiffs then requested, at the trial court level, that the dredged area in the riparian lot be filled and the docks removed. The trial court refused the request, plaintiffs appealed, and in *Pierce v Riley (Supplemental Opinion)* 51 Mich App 504; 215 NW2d 759 (1974), *(Stony Lake III),* this Court ordered the filling of the channel.

On leave to appeal, the Supreme Court on June 27, 1974, reversed the Court of Appeals and ordered the circuit court to hold the cause in abeyance pending findings of fact and a decision by the Department of Natural Resources on an application by defendants pursuant to MCLA 281.951 *et*

*seq.;* MSA 11.475(1) *et seq.,* the Inland Lakes and Streams Act, and to grant appropriate relief thereafter. 392 Mich 765; 219 NW2d 434 (1974).

When the DNR had completed its review, the trial court made various findings: it held that the Court of Appeals decision finding defendants' originally proposed use of the riparian lot unreasonable *(Stony Lake II)* had not been reversed; that the Supreme Court order of June 27, 1974, found the Court of Appeals remedy in *Stony Lake III* (to refill and restore the channel) was inequitable relief; that, therefore, defendants were not required to fill the channel in the riparian lot but that they could still not grant riparian rights to the owners of nonriparian lots in Holiday Shores; and, finally, that defendants were not prohibited from using the riparian lot as a marina according to a lawful permit from the DNR. The court enjoined plaintiffs from exercising any administrative rights before the DNR.

On December 6, 1976, the trial court adopted most of the restrictions which defendants had unilaterally imposed on their use of the riparian lot, including a limitation on the number of boat slips (down from 100 to 60), a restriction on usage of the marina to only owners of the Holiday Shores subdivision, their families and guests, and a limitation allowing lot owners the right to dock no more than one boat at the marina. Plaintiffs appeal from this judgment. Defendants cross-appeal, requesting this Court to hold that defendants' present use of its recreational outlet is reasonable in light of the DNR's study and the circuit court opinions entered in this matter. Thus have we arrived at *Stony Lake IV.*

The core of the present controversy is the Supreme Court's Delphic order of June 27, 1974, 392

Mich 765. We do not construe that order as over-ruling either *Stony Lake I* or *Stony Lake II.* The use of the lot as described in *Stony Lake II* is still unreasonable. In its order, the Supreme Court concerned itself with the remedy, not the finding of unreasonableness. The law of *Stony Lake II* remains the law of the case. Defendants applied for leave to appeal the decision in *Stony Lake II,* an application which was denied by the Supreme Court. A conclusion reached in an earlier appeal to the Michigan Supreme Court becomes the law of the case and is not subject to review on appeal from a subsequent trial. *Leland v Ford,* 252 Mich 547; 233 NW 410 (1930), *Watkins v Gabriel Steel Co,* 268 Mich 264; 256 NW 333 (1934), *Detroit Power Screwdriver Co v Ladney,* 39 Mich App 629; 197 NW2d 857 (1972), *Allen v Michigan Bell Telephone Co,* 61 Mich App 62; 232 NW2d 302 (1975).

"It is the well-settled rule that courts will not review former decisions made by the same court in the same cause, and on the same facts." *The People's Savings Bank v Eberts,* 96 Mich 396, 398; 55 NW 996 (1893).

The question, therefore, is not now subject to review on appeal to this Court.

Further uncertainty engendered by the Supreme Court's June 27 order pertains to the filling of the channel.

We do not agree with the trial court that the Supreme Court, by its order instructing the circuit court to hold the cause in abeyance pending findings of fact by the DNR, found the refilling and restoration of the channel to be inequitable relief. Granted, the order is subject to various interpretations, but we do not believe it foreclosed the trial court from considering the refilling of the channel as one of the possible remedies in this protracted

legal battle. It was error for the trial court to preclude the possibility from its consideration.

True, the DNR in making its findings found that, within limitations, the marina would have no adverse impact on the lake. But it is likewise true that the DNR's review of the matter concluded that filling the channel, should such a remedy be chosen, would not adversely affect Stony Lake, provided certain safeguards were effectuated. A permit is required for both the maintenance of a marina and the filling of the channel, a fact upon which the Supreme Court order does not comment.

The Inland Lakes and Streams Act, pursuant to which the DNR makes its findings, states that one of its purposes is to protect riparian rights and the public trust in inland lakes and streams. We must view the Supreme Court order from the perspective of the purpose of the act. In protecting the public trust, the Legislature was keeping watch over the environmental impact of various operations on inland lakes and streams.

It was sound business sense for defendants to apply for a permit to maintain a marina to which the DNR has given its stamp of approval. But the business acumen of defendants cannot preclude this Court from protecting the interests for which the Legislature had regard nor can it preclude plaintiffs from exercising their rights as riparian owners. The act explicitly states that it shall not modify the rights and responsibilities of any riparian owner to the use of his or her riparian water.

Accordingly, the DNR's approval of the marina does not end the matter. Its simultaneous approval of a landfill (undoubtedly because it was unable to interpret the Supreme Court's order) confronts us again with the question of a proper final remedy. The Court of Appeals reviews equity cases *de novo,*

but we will not disturb the trial court's findings unless we are convinced that we would have reached a different result had we occupied that court's position. *Pyne v Elliott,* 53 Mich App 419; 220 NW2d 54 (1974).

The original use contemplated by defendants called for the granting of easements to 90 nonriparian lot owners to and through the riparian lot, #91, in which a channel was built. In *Stony Lake II,* this Court found and it is the law of the case that such use is unreasonable, since the number of families having access to the lake would have increased 66% and the number of families per surface acre of lake would have increased from about 0.5 to 0.89. 35 Mich App at 124.

"[T]he construction of 90 residences with ready access to the lake at all times, will not significantly decrease the number of people using the lake as members of the general public, but it will increase drastically the use of the lake by local residents, the people who put the heaviest burden on a lake this small in area." 35 Mich App at 127.

Reasonableness remains the criterion for use of water by riparian owners. When there are several owners to an inland lake, such proprietors and their lessees and licensees may use the surface of the whole lake for boating, swimming, fishing and other similar riparian rights, so far as they do not interfere with the reasonable use of the waters by other riparian owners. *Battle Creek v Goguac Resort Association, Ltd,* 181 Mich 241; 148 NW 441 (1914), *Burt v Munger,* 314 Mich 659; 23 NW2d 117 (1946), *Tobias v Tobias,* 345 Mich 263; 75 NW2d 802 (1956). *Cf. Botton v State,* 69 Wash 2d 751; 420 P2d 352 (1966), 3 Tiffany, Law of Real Property (3d ed), § 739, p 151.

In *Thompson v Enz, supra,* at 687, our Supreme Court propounded standards for determining what constitutes reasonable usage. See also, *Stony Lake I* and *Stony Lake II.* The factors there set forth must be applied suitably in each situation.

"No statement can be made as to what is such reasonable use which will, without variation or qualification, apply to the facts of every case. But in determining whether a use is reasonable we must consider what the use is for; its extent, duration, necessity and its application; the nature and size of the stream, and the several uses to which it is put; the extent of the injuries to the one proprietor, and the benefit to the other; and all other factors which may bear upon the reasonableness of the use."

In the instant case, that the DNR approved defendants' use of the channel as a marina does not *ipso facto* make that use reasonable in the circumstances, *i.e.,* where there are competing reasonable uses. It must be conceded that the trial court put certain restrictions on the use of the marina. We are, however, bound by and agree with the concept of reasonableness delineated in *Stony Lake II.*

The limitations imposed are irrelevant to the fact that, just as in *Stony Lake II,* the usage of the small lake will increase substantially because of the presence of a much larger number of persons, *viz.,* the Holiday Shores owners, with ready access to the lake. The particular usage proscribed in *Stony Lake II* is not significantly changed through the concept of a marina. Indeed, defendants assert that from the outset the channel has been advertised as and used as a marina. This only enforces a finding that if the channel was being so used at the time of *Stony Lake II,* such usage continues to be unreasonable. The present marina concept

"drastically increases the use of the lake by local residents, the people who put the heaviest burden on a lake this small in area". 35 Mich App at 127.

The DNR report itself noted on page 9 that "[t]here will predictably come a time when the scope of use presently deemed reasonable will become unreasonable". Neither we nor plaintiffs are bound by the DNR's findings as to present reasonableness. The Inland Lakes and Streams Act specifies that nothing in the act limits the right of a riparian owner to institute proceedings in any circuit court of the state against any person when necessary to protect his or her riparian rights. MCLA 281.961; MSA 11.475(11).

The only effective relief in this case is the refilling and restoration of the channel. The DNR has reported, pursuant to the Supreme Court order, that such action will have no adverse impact on Stony Lake if the department's recommendations are followed.

Refilling the channel is the only way in which all riparian owners will be able to make a reasonable use of the lake without interfering with the rights of others. Only by refilling the channel can this protracted litigation be ended; another remand would simply lead to more proposed uses for the channel. The problem, however, lies as much in the fact that the channel is used at all as it does in the way the channel is used. Providing residents of Holiday Shores with a means of ready access places an undue burden on the lake which unreasonably interferes with the rights of other riparian owners.

We are not unaware that use of the channel is no longer proposed, but is now reality. Defendants chose to proceed with the development at their own risk while the issue was still in litigation.

They cannot now ask us to be persuaded by a factor they have intentionally created. Courts do well, in cases of this sort, to weigh the economic positions of the respective parties and consider the burdens placed on each to arrive at an equitable and enlightened solution. But defendants have so imposed the economic burden on themselves that it would be inappropriate for this Court to take it into account.

We therefore order defendants to fill the channel in compliance with a permit issued by the Department of Natural Resources. Guidelines provided by the department must be followed. These include provision for a silt screen or some other suitable measure to reduce the drift of fill material into the lake proper. In addition erosion control measures, such as sodding, seeding, revegetation and riprap, must be implemented.

The judgment of the trial court is reversed.