*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IMAD YATOOMA,

      Plaintiff-Appellant

v

SAFA DABISH,

      Defendant-Appellee

UNPUBLISHED
March 21, 2019

No. 340110
Wayne Circuit Court
LC No. 16-001491-CB

---

IMAD YATOOMA,

      Plaintiff-Appellant

v

SAFA DABISH,

      Defendant-Appellee

No. 341423
Wayne Circuit Court
LC No. 16-011491-CB

---

Before: O'BRIEN, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

In these consolidated appeals, plaintiff Imad Yatooma appeals by right the trial court's order granting summary disposition in favor of defendant Safa Dabish as to plaintiff's fraud claim pursuant to MCR 2.116(C)(8) and as to plaintiff's conversion claim pursuant to MCR 2.116(C)(10). Plaintiff also appeals by right the trial court's post-judgment order awarding case evaluation sanctions and other sanctions in favor of defendant. This matter arises out of a confusing series of transactions that ultimately resulted in non-party Wasim Hanna owing money to both plaintiff and defendant. Plaintiff and defendant directed Hanna to make payments to a company called Angel Cakes, which plaintiff and defendant co-owned at the time. Hanna complied; however, at some point defendant bought out plaintiff's interest in Angel Cakes. Thereafter, plaintiff received no portion of Hanna's payments. Plaintiff's complaint generally asserts that defendant wrongfully retained plaintiff's half of Hanna's payments. We affirm the

grants of summary disposition, but we vacate the award of sanctions and remand for further proceedings.

## I. FACTUAL BACKGROUND

As of 2007, plaintiff and defendant were co-owners of two companies, Angel Cakes, Inc. (Angel Cakes) and IAS, LLC (IAS). In February of 2007, plaintiff, defendant, and Wasim Hanna entered into an agreement under which Angel Cakes and IAS sold certain real property to another corporate entity, Dwyer Property, LLC (Dwyer). The agreement mostly refers to Hanna by name as the buyer, but Hanna signed the document on behalf of Dwyer. The purchase price of the property was $95,000. However, the agreement indicated that "[plaintiff] and [defendant] shall contribute $47,500.00 of their current equity interest that they have in the selling entity I.A.S., LLC and the balance of $47,500.00 shall be paid by Wasim Hanna, subject to [adjustments including a $15,000.00 down payment and a payment schedule for the remainder]."

The real estate transaction was executed on March 2, 2007. On the same day, Hanna personally executed a promissory note in favor of IAS in the amount of $32,500.00.[1] Hanna filed a property transfer affidavit for the property, listing Dwyer as the buyer and IAS as the seller. Notably, this promissory note was *not* made in favor of either plaintiff or defendant *personally*; it was only made in favor of IAS.

According to Hanna, the Dwyer business rapidly fell apart as a triumvirate, which resulted in Hanna buying plaintiff and defendant out and becoming the sole owner of Dwyer. On May 1, 2007, the three individuals executed a document agreeing to convey plaintiff's and defendant's interests in Dwyer to Hanna, in exchange for $47,500.00 "acknowledged by way of a promissory note." The purchase formally occurred on August 30, 2007, and on the same day, Hanna personally executed another promissory note, this time in the amount of $47,500.00 and in favor of plaintiff and defendant personally. This August promissory note incorporated the prior March $32,500.00 promissory note by reference. Also on the same day, a mortgage was entered into between Dwyer, with Hanna signing in his corporate capacity, and plaintiff and defendant as individuals. The mortgage secured the debt referenced in the promissory notes.

Plaintiff and defendant verbally directed Hanna to make his payments to Angel Cakes, whereupon plaintiff and defendant divided the money equally. There is no dispute that Hanna did ultimately pay off the entirety of his debt and all requisite interest on that debt. In the meantime, however, plaintiff's and defendant's working relationship broke down, resulting in a settlement agreement on August 1, 2012, after litigation commenced in Macomb County. The settlement agreement stated, in relevant part, that defendant would pay plaintiff:

> the sum of $625,000, without interest, in full resolution of all past, present, and future claims of whatever nature either party may have against each other from the beginning of time to the date of this agreement, including but not limited to:

---

[1] This amount presumably represents $47,500.00 less the $15,000.00 down payment.

1. Full resolution of all past, present, and future claims of whatever nature they may have arising out of their business dealings and partnership with each other,

2. Full resolution of the purchase by [defendant] of all interest [plaintiff] may have in ANGEL CAKES, INC, IAS LLC, and all related property both real and personal) [sic], and;

3. Any and all matters which were claimed or could have been claimed in the above captioned litigation.

The agreement included a separate payment of $250,000 for the return by plaintiff of all Angel Cakes inventory. Plaintiff and defendant entered into another settlement agreement a few days later to "embod[y] the settlement" above. In relevant part, the second settlement agreement contained the following release language:

> Except for the promises made in this Agreement, Dabish, Yatooma, Angel Cakes, and IAS, for themselves and their heirs, beneficiaries, representatives, employees, agents and assigns, and any other person who may make any claim of any kind by or through them, MUTUALLY RELEASE, ACQUIT and forever DISCHARGE one another of and from any and all actions, causes of action, claims and demands whatsoever, whether known or unknown, suspected or unsuspected, whether founded in fact or in law and from all manner of suits, debts, sums of money, accounts, controversies, agreements, promises, trespasses, damages, judgments, costs, injuries, claims and demands of any kind whatsoever which they or their heirs, beneficiaries, representatives, employees, agents or assigns have had or may have had from the beginning of time to the date of this Agreement, including any claim for damages, costs or attorney fees and all other claims asserted or which might have been asserted in the matter of Dabish v Yatooma et al, in the Macomb Circuit Court, Case No. 11-004776-CB. Other than the promises made in this Agreement, this general release extinguishes all obligations of any kind between the parties.

> This is a full and complete general release of any and all claims which either party may have against the other party or any of their heirs, beneficiaries, representatives, employees, agents or assigns, upon or by reason of any matter, cause or thing whatsoever, which has occurred prior to the date of this Agreement. The parties declare that no representation concerning the nature and extent of the legal or financial liability of the other was made by his attorney, agent or other representative employed by, or acting on behalf of the other which induced him to dismiss this case and sign this Agreement.

> This Agreement is not an admission of liability on the part of any party but rather a compromise of disputed claims and liability is expressly denied.

> THE INTENT OF THIS PROVISION IS FOR THE PARTIES TO RELEASE EACH OTHER AS BROADLY AND AS GENERALLY AS POSSIBLE, WITHOUT LIMITATION OR

EXCLUSION OF ANY CLAIMS OF ANY KIND EXCEPT AS TO THE RESPECTIVE PARTIES' OBLIGATIONS UNDER THIS SETTLEMENT AGREEMENT. [(emphases in original).]

As noted, there is no dispute that Hanna continued making regular payments to Angel Cakes. Defendant testified that as long as he and plaintiff had remained partners, he had split the payments made by Hanna, and after he "bought out Angel Cake and IAS," he ceased splitting those payments. Plaintiff contends that defendant explicitly told plaintiff that Hanna had ceased making payments, which is why plaintiff stopped receiving any portion of those payments. Defendant contends that he and plaintiff never talked to each other at all since a year before the 2012 settlement.

Hanna made the last payment in 2016. Plaintiff averred that "in early 2016 Wasim Hanna's attorney called me and requested that I sign a discharge of mortgage because his client paid the Dwyer Property LLC promissory note in full". Plaintiff opined that Hanna had in fact paid off the note. However, plaintiff's action is based generally on the contention that Hanna made the post-2012 payments to defendant personally in some way, and defendant then retained the entirety of those payments. Plaintiff commenced the instant suit, alleging fraud and conversion. Neither Hanna nor any of the corporate entities were ever named parties in this proceeding.

## II. PROCEDURAL BACKGROUND

Plaintiff filed his complaint on September 8, 2016. Pursuant to MCR 2.405(B), defendant promptly filed an offer of judgment in the amount of $1, to which plaintiff made a counteroffer of $30,000. In lieu of an answer, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and MCR 2.116(C)(10). Defendant simultaneously moved for sanctions pursuant to MCR 2.114(D), and for security for costs pursuant to MCR 2.109. Defendant argued that plaintiff had failed to state a claim for fraud, because the complaint omitted any allegation of any of the actual elements of fraud. Defendant also argued that plaintiff had failed to factually support his claim for conversion, because Hanna's payments were always to Angel Cakes rather than defendant, Hanna's payments were exclusively for the purchase of real property from Angel Cakes, and plaintiff never raised the issue in the prior litigation. Finally, defendant contended that the action was frivolous and sought sanctions pursuant to former MCR 2.114.[2] Defendant included an affidavit from Hanna in support.

In response, plaintiff argued that Hanna purchased both the real property *and* plaintiff's and defendant's interests in Dwyer. Consequently, plaintiff asserted that there existed genuine questions of material fact. Plaintiff also attached an affidavit in which he stated that defendant had lied about the receipt of money from Hanna, and further arguing that defendant was continuing to make misrepresentations in his motion. Plaintiff asserted that Hanna's affidavit had been directed by defendant and that his claims were not frivolous. Plaintiff contended that in

---

[2] Former MCR 2.114 has been substantially relocated to current MCR 1.109(E). Former MCR 2.114(D)(1)-(3), (E), and (F) are identical to current MCR 1.109(E)(5)(a)-(c), (6), and (7), respectively.

-4-

the event the trial court agreed that his fraud claim was inadequately stated, he should be allowed to amend his complaint.

The trial court held a hearing and determined that summary disposition was inappropriate as to the conversion claim. At the same time, the trial court concluded that plaintiff was not "even close to a fraud claim" and granted summary disposition as to plaintiff's fraud claim. Plaintiff mentioned the possibility of amending his complaint, in response to which the trial court warned plaintiff that he would need "more than just your client's statement," but that "if you get something else in discovery that shows fraud then by all means, go ahead with it."

The trial court never made any express ruling on defendant's request for sanctions. However, it warned plaintiff about pursuing the fraud claim that "if you do that and lose I am going to give them [defendant] every penny of cost." Nonetheless, it reiterated that it would permit plaintiff to amend the complaint. Finally, the trial court concluded that it was not prepared to grant a motion for costs at that time. The trial court entered an order accordingly, granting summary disposition in favor of defendant as to the fraud claim, denying summary disposition as to the conversion claim, and taking the request for costs under advisement. There is no indication in the lower court record file or register of actions suggesting that plaintiff ever sought to amend his complaint. The lower court register of actions reflects that the parties both rejected a case evaluation on July 13, 2017.

Following discovery, defendant filed another motion for summary disposition pursuant to MCR 2.116(C)(10), asserting that all of Hanna's payments had been made to Angel Cakes rather than to defendant or plaintiff personally. Defendant argued that plaintiff had sold all of his interest in Angel Cakes pursuant to a settlement agreement, and the basis for plaintiff's conversion claim was the proven-incorrect allegation that Hanna made payments to defendant personally. In response, plaintiff argued that defendant's own testimony established that he had been splitting Hanna's payments until he bought plaintiff out of Angel Cakes, and thereafter he continued to receive the payments but stopped splitting them. Plaintiff further stated that according to the testimony, after the parties split their partnership, defendant "continued to take the money into Angel Cake [sic], told my client that Hanna wasn't paying anymore and he continued to take the money into Angel Cake [sic]."

The trial court held another hearing, during which it expressed concern about Hanna's obvious language barrier, to which defendant explained that Hanna's attorney had been present, and both Hanna's attorney and defendant's attorney spoke Hanna's language. The trial court directly asked plaintiff whether anything in the settlement agreement indicated that plaintiff was to continue receiving proceeds from Hanna's checks, to which plaintiff responded affirmatively but was unable to show anything in the documents in support. Plaintiff admitted that Hanna never had any agreement with Angel Cakes or owed anything to Angel Cakes, plaintiff and defendant instructed Hanna to make his payments to Angel Cakes purely out of convenience, and no documentation existed of that instruction even though all of the individuals had lawyers at the time. Defendant reiterated that plaintiff had released any interest in Angel Cakes pursuant to the settlement, and there was no evidence any entity other than Angel Cakes ever received any of Hanna's payments. Plaintiff protested that it was "an injustice" to allow defendant "to hide behind a corporation," but in response to a question from the trial court, he expressly and explicitly disclaimed that he sought to pierce the corporate veil.

The trial court concluded that plaintiff would probably have a case if Hanna had made payments to defendant in his personal capacity, or if Hanna had ever made payments to the parties in their personal capacities, but because the payments were only ever made to Angel Cakes, it found no proof that defendant had stolen any money from plaintiff. The trial court entered an order granting summary disposition in favor of defendant and closing the case. Plaintiff's appeal in Docket No. 340110 followed.

Defendant then filed a post-judgment motion for case evaluation sanctions, taxable costs, and attorney fees. Defendant stated that both parties had rejected a case evaluation award of $5,000 and observed that plaintiff had not improved upon that award amount, entitling defendant to sanctions. Defendant also reminded the trial court that it had not yet ruled on defendant's prior motion for costs despite taking that motion under advisement. Defendant asked for attorney fees in the amount of $27,862.50, for 74.30 hours at $375 an hour. Defendant also asked for costs in the amount of $697.35. In response, plaintiff tacitly admitted to the evaluation award and amount, but argued instead that defendant failed to provide any itemization in support of his request for attorney fees, sanctions could only be imposed for expenditures after rejection of a case evaluation, and almost nothing of substance occurred between the time the evaluation was rejected and the trial court's entry of its final order. Defendant filed a supplemental exhibit consisting of an itemized invoice from his attorney.

The trial court held a hearing on the motion. The trial court apparently was concerned only that it had told plaintiff during the first motion hearing that "if you do that and lose I am going to give them [defendant] every penny of cost." As discussed, this is an accurate quotation from the first motion hearing, but it is unambiguous from context that the issue under discussion at the time had been plaintiff's fraud claim. The trial court then told plaintiff that "I'm not going to give him all the costs because I, far as I'm concerned what I'm going to give is enough to make him not want to appeal me and enough to make you not want to appeal me too but you can still do it." The trial court granted defendant $887 in out-of-pocket costs, $8,500 for case evaluation sanctions, and, for no further stated basis and with no analysis, $16,000 in attorney fees. The trial court entered an order accordingly. Plaintiff's appeal in Docket No. 341423 followed. This Court consolidated the appeals.

## III. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. A motion brought under MCR 2.116(C)(8) should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the non-moving party. *Id*. at 119. Only the pleadings may be considered when deciding a motion under MCR 2.116(C)(8). *Id*. at 119-120.

-6-

"A reviewing court will not reverse a trial court's decision to deny leave to amend pleadings unless it constituted an abuse of discretion. An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes." *McQueer v Perfect Fence Co*, 502 Mich 276, 296; 917 NW2d 584 (2018) (internal quotations and citations omitted). The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

This Court reviews de novo whether to award case evaluation sanctions, but reviews for an abuse of discretion the amount of sanctions and "the amount awarded as reasonable attorney fees." *Peterson v Fertel*, 283 Mich App 232, 239; 770 NW2d 47 (2009). This Court reviews for an abuse of discretion a trial court's ruling on a motion for costs pursuant to MCR 2.625(A)(1), but reviews de novo any underlying legal issues concerning the interpretation or application of the court rule. *Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 365; 824 NW2d 609 (2012). "We review for clear error the circuit court's decision to impose sanctions on the ground that an action was frivolous within the meaning of MCR 2.625(A)(2) and MCL 600.2591." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013). "This Court reviews for a clear error a trial court's decision regarding sanctions based on frivolous pleadings or claims" pursuant to former MCR 2.114. *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 75; 903 NW2d 197 (2017). Any underlying factual findings by the trial court are reviewed for clear error. *Jerico Constr, Inc v Quadrants, Inc*, 257 Mich App 22, 35; 666 NW2d 310 (2003). "An error of law necessarily constitutes an abuse of discretion." *Denton v Dep't of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016). A claim is not frivolous merely because it is unsuccessful or because it is determined to be unsupported after discovery. *Jerico Constr*, 257 Mich App 35-36.

## IV. FRAUD

Plaintiff argues that the trial court erred in concluding that plaintiff failed to state a valid cause of action for fraud. There are "several interrelated but distinct" legal doctrines "loosely aggregated under the rubric of 'fraud.' " *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). There is no dispute that plaintiff pursues a claim of "actionable fraud," under which:

> [t]he general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Id.* (quotation omitted, alteration by the *Titan* Court)).]

Defendant thus correctly observes that a *material misrepresentation* is critical to a fraud claim. Furthermore, the trial court granted summary disposition pursuant to MCR 2.116(C)(8), under which only the pleadings may be considered. *Maiden*, 461 Mich at 119-120.

A "pleading" is defined as a complaint, a cross-claim, a counterclaim, a third-party complaint, an answer to any of the above, or a reply to an answer. MCR 2.110(A). For purposes of review under MCR 2.116(C)(8), an attachment to a pleading is considered part of the pleading. *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007). Plaintiff attached numerous documents to his complaint, including the promissory notes, the offer to purchase, the purchase agreement, and a deed. Plaintiff did *not* attach any affidavits to his complaint. For purposes of MCR 2.116(C)(8), plaintiff's affidavit may not be considered.

Consequently, the complaint simply does not state anywhere that defendant made any kind of representation to plaintiff at all. The only representation mentioned is that *Hanna* told plaintiff that defendant received all of the payments due, which plaintiff deems accurate. The complaint then states that defendant "defrauded plaintiff by keeping all payments due." Simply retaining the payments is not itself a misrepresentation, and nowhere in the complaint is any assertion that defendant lied to plaintiff. Additionally, plaintiff contends that the element of "reliance" is based on plaintiff failing to demand his share of the money from defendant. Again, this is not alleged in the complaint. Fraud must be alleged with particularity. MCR 2.112(B)(1). Because plaintiff clearly failed to state a claim of fraud in his complaint, the trial court properly granted summary disposition pursuant to MCR 2.116(C)(8) as to plaintiff's fraud claim.

## V. LEAVE TO AMEND

Plaintiff's argues that he should have been granted the right to amend his complaint regarding his fraud claim, but he was denied the right to do so. Plaintiff discussed the possibility of amendment with the trial court, which indicated that it *would* grant leave to amend in the future if plaintiff made that request. However, the record offers no indication that plaintiff ever *sought* to amend his complaint. The trial court cannot have "refused" a request that was not made. This issue cannot be deemed "raised" before the trial court, so it is not preserved. *Polkton Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Furthermore, in light of the trial court's discussion, plaintiff cannot contend that he would have had any basis to deem such a request futile. See *Miller v Hensley*, 244 Mich App 528, 532 n 2; 624 NW2d 582 (2001) ("an issue is not waived by a party's failure to make futile objections.").

Generally, "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence." *Farm Credit Services of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 684 591 NW2d 438 (1998). Because the trial court was never asked to exercise its discretion, the trial court cannot possibly have abused its discretion. We additionally note that given plaintiff's own direction to Hanna to make payments to Angel Cakes and the subsequent settlement agreement regarding Angel Cakes, it is unclear whether plaintiff has any right to complain about Angel Cakes thereafter retaining the payments. See *Holzbaugh v Detroit Bank & Trust Co*, 371 Mich 432, 436-437; 124 NW2d 267 (1963) (discussing estoppel by acquiescence). It is doubtful that the trial court would have abused its discretion by denying leave to amend even if plaintiff had ever sought to do so.

## VI. CONVERSION

Plaintiff argues the trial court wrongly held that no conversion occurred because the payments were only made to Angel Cakes, despite the fact that defendant bought plaintiff's

interest in the company. Plaintiff argues that defendant personally received Hanna's checks after the settlement agreement and retained half of the funds, knowing they were plaintiff's property. He further argues that defendant should not escape liability merely because he acted as an officer of a corporation.

"In the civil context, conversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins Co v Allstate Ins Co,* 439 Mich 378, 391; 486 NW2d 600 (1992). In general, "an action cannot be maintained for conversion of money unless there is an obligation on the part of the defendant to return the specific money entrusted to his care." *Citizens Ins Co of America v Delcamp Truck Ctr, Inc*, 178 Mich App 570, 575; 444 NW2d 210 (1989). Although the money need not be specifically earmarked, "[t]he defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Id*. In contrast, "[c]hecks are considered to be the property of the designated payee and may be the subject of a suit for conversion." *Trail Clinic, PC v Bloch*, 114 Mich App 700, 705; 319 NW2d 638 (1982). Additionally, a person may be liable for conversion by aiding and abetting, or merely by benefiting and subsequently approving of the act of dominion. *Id*. at 706.

As an initial matter, the parties appear to dispute what exactly Hanna's payments represented, a dispute not helped by the obvious confusion at Hanna's deposition. As discussed, Hanna's promissory note regarding the purchase of real property was in favor of IAS, *not* plaintiff or defendant personally. In contrast, Hanna's promissory note regarding the purchase of Dwyer *was* in favor of plaintiff and defendant as personal individuals. Pursuant to the settlement agreement, plaintiff released any interest in IAS, which by necessary implication includes any interest in the real property or debt owed to IAS. Defendant is therefore necessarily correct in concluding that the only debt that could theoretically be converted is the $47,500 debt for the purchase of plaintiff's interest in Dwyer.[3] However, our review of the evidence in the record reveals at least a question of fact whether Hanna's payments to Angel Cakes represented in part a debt due to plaintiff personally. The checks were, however, never exclusively for any debt Hanna owed only to plaintiff.

Whatever the nature of the debt, it is undisputed that Hanna only ever made his checks to Angel Cakes, and never to either plaintiff or defendant personally. The act of physically accepting Hanna's checks made out to Angel Cakes and depositing those checks into Angel Cakes cannot constitute an act of wrongful dominion in this context. First, plaintiff personally directed that Hanna's payments be handled in that manner. Secondly, plaintiff personally participated in handling Hanna's payments in the same manner: Hanna testified that from 2007 to 2012, he physically gave the checks to plaintiff. Finally, plaintiff apparently never asked

---

[3] Half of this amount is well below the trial court's jurisdictional limit, see MCL 600.8301(1), especially given that some of it was paid off by 2012. Nevertheless, plaintiff's claim for triple damages, in the absence of any alleged bad faith in the pleadings, presumably establishes proper jurisdiction. See *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211; 884 NW2d 238 (2016). The issue was brought to the trial court's attention but never formally determined.

Hanna to stop paying plaintiff's portion of the debt to Angel Cakes, nor did he include any mention of Hanna's payments in the 2012 settlement agreement. Plaintiff cannot contend that an arrangement he created and from which he benefited is wrongful. See *Pierce v Riley*, 81 Mich App 39, 48; 264 NW2d 110 (1978).

The only real question is therefore whether defendant's failure to redirect some portion of Hanna's payments to plaintiff after the 2012 settlement constitutes an act of wrongful dominion over plaintiff's personal property. Plaintiff points out that "where a defendant acts on his own behalf or as an officer or agent of a corporation he is personally liable for torts in which he actively participated." *Trail Clinic, PC*, 114 Mich App at 709. However, the defendant at issue in that case actively assisted in the conversion of specific checks by facilitating the misdirection of those checks. *Id*. at 704, 709. Because defendant here never received the checks in his personal capacity, it is difficult to say that he had an "obligation … to return the specific money entrusted to his care." See *Citizens Ins Co*, 178 Mich App at 575. Because of the 2012 settlement, it is equally difficult to say that Angel Cakes had any such obligation. Furthermore, the receipt of the money was clearly with plaintiff's consent, having directed the payments to be made to Angel Cakes. Finally, as noted, the checks were never made out to plaintiff, were never for a debt owed exclusively to plaintiff, and were therefore never plaintiff's sole property.

Plaintiff has failed to articulate any specific point at which defendant exercised wrongful dominion over specific money belonging to plaintiff. The deposition of the checks into Angel Cakes cannot be wrongful, and thus even blurring the distinction between defendant and the company, Angel Cakes could not be considered in wrongful possession of the money. Pursuant to the settlement agreement, plaintiff had no interest in Angel Cakes. Finally, there is no evidence that defendant converted the money deposited into Angel Cakes for his own *personal* use, and plaintiff explicitly disclaimed any interest in piercing the corporate veil. Finally, plaintiff seemingly acquiesced by never trying to direct Hanna to discontinue paying plaintiff's portion of the debt to Angel Cakes. *Holzbaugh*, 371 Mich at 436-437.

There is a genuine question of fact whether any of the money Hanna paid to Angel Cakes was for a debt he owed to plaintiff personally. However, that question of fact is not material. Because plaintiff has not identified any specific point at which defendant exercised or facilitated an act of wrongful dominion over money belonging to plaintiff, the trial court properly granted summary disposition in favor of defendant as to the conversion claim.

## VII. CASE EVALUATION SANCTIONS

Plaintiff next argues that the trial court's award of sanctions must be reversed, because the trial court never actually ruled that any of plaintiff's claims were frivolous, never articulated a legal basis for the amount or reasonableness of the sanctions awarded, and impermissibly awarded sanctions for conduct beyond the dates permitted for a case evaluation award. The trial court awarded case evaluation sanctions in the amount of $8,500.00; costs in the amount of

$887.00; and "sanctions . . . in the amount of $16,000.00, which were previously taken under advisement by the court." We agree that the trial court erred.[4]

There is no dispute that a unanimous case evaluation was entered and that both parties rejected that evaluation as of July 13, 2017. There is also no dispute that defendant received a more favorable outcome than the award, and plaintiff received a less favorable outcome than the award. Consequently, plaintiff is obligated to pay defendant's actual costs and reasonable attorney fees incurred after and causally connected to that rejection, in contrast to the usual "American rule" under which parties are responsible for their own attorney fees and costs. See *Haliw v City of Sterling Heights*, 471 Mich 700, 706-707, 711 n 8; 691 NW2d 753 (2005). According to the invoice defendant attached, defendant's attorney charged $8,756.25 for services between the date of the rejection and the hearing on the motion for sanctions. Consequently, it appears that *if* defendant's attorney's hourly rate of $375 an hour is reasonable, the trial court's award of $8,500 for case evaluation sanctions is also reasonable. The trial court failed to make any determination of reasonableness, however, rendering its award impermissible. See *Smith v Khouri*, 481 Mich 519, 528-530; 751 NW2d 472 (2008). Likewise, the invoice reflects $783.25 in costs dating back to *before* the case evaluation rejection, which is also improper.

The $16,000.00 award is presumably based on former MCR 2.114, which was the basis for defendant's request for sanctions in his first motion for summary disposition. The trial court did not explicitly rule on any request for sanctions at the first hearing, although it took under advisement defendant's request for costs pursuant to MCR 2.109. Notwithstanding the fact that the only mention the trial court made previously regarding frivolity pertained exclusively to the fraud claim, the trial court apparently concluded that sanctions were appropriate because it had previously warned plaintiff that the *entire* complaint was frivolous. Plaintiff correctly argued to the trial court, and argues now, that the trial court had never previously ruled that his *entire* case was frivolous. Indeed, the trial court's threat to impose sanctions was clearly conditional upon plaintiff *continuing* to pursue his fraud claim *thereafter*. As discussed, plaintiff never even tried to further pursue his fraud claim.

The trial court further openly stated that it chose an amount calculated to discourage both parties from appealing, not based on any finding of reasonableness, and further based on a completely wrong assumption that it had already deemed the entire case frivolous. Failure to properly engage in a legally mandated analysis is necessarily an abuse of discretion. See *Pirgu v United Services Auto Ass'n*, 499 Mich 269, 283; 884 NW2d 257 (2016); see also, *In re Yarbrough Minors*, 314 Mich App 111, 137; 885 NW2d 878 (2016).

We do not hold that defendant was not entitled to case evaluation sanctions, nor do we hold that the trial court is not permitted to determine that any part of plaintiff's case was

---

[4] Insofar as we can determine, defendant did *not* seek sanctions based on the offer to stipulate to entry of judgment, so we will not discuss plaintiff's argument pertaining to MCR 2.405(E). Furthermore, because we do not reverse the trial court's grants of summary disposition, we need not consider vacating the award of sanctions on that basis. See *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 525-526; 892 NW2d 467 (2016).

frivolous.  We also do not hold that the amounts of the sanctions awarded would necessarily be improper, if they were based on proper findings and analyses.  However, the trial court failed to make any necessary finding of reasonableness, and it may not base an award of sanctions for frivolity on the incorrect belief that it had already made a finding.  The trial court's award of sanctions must be vacated, and the matter must be remanded for reconsideration.

## VIII.  CONCLUSION

The trial court's orders granting summary disposition in favor of defendant are affirmed.  The trial courts order awarding sanctions in favor of defendant is vacated, and the matter remanded for further proceedings.  We do not retain jurisdiction.  Defendant may tax costs as the prevailing party in Docket No. 340110, and plaintiff may tax costs as the prevailing party in Docket No. 341423.  MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause